## ROACH v. JUNCTION OIL & GAS CO. et al.

No. 8870—Opinion Filed April 1, 1919.

(179 Pac. 934.)

(Syllabus.)

**1. Oil and Gas — Lease — Extension of Lessee's Rights—Conditions Precedent.**

Where an oil and gas lease contains a provision that it shall be operative for the period of five years from date, or so long as gas, oil, or other minerals are found thereon in paying quantities in, under, and upon said land, it is a condition precedent to the extension of lessee's right to continue operations beyond the five years that oil and gas or either of them should be found upon the premises in paying quantities within five years from the date of the lease.

**2. Same—Oil and Gas Lease—Extension.**

After gas was found upon the leased premises within five years from the date thereof in paying quantities the lessee thereby became vested with a limited estate in the leased premises for further operations in accordance with the terms of the lease.

**3. Same—Loss of Lessee's Rights**

Such right, once vested by discovery of gas in an upper sand, will not be lost if the lessee continues to drill deeper in search of oil or gas in a lower sand, although he does not find oil or gas in the lower sand within the limitations prescribed by the lease. But, if oil or gas be not found in the lower sand, production from the upper sand could not be deferred without incurring the penalty of abandonment or forfeiture if forfeiture be prescribed.

Error from District Court, Kay County; W. M. Bowles, Judge.

Action by Maggie Roach against the Junction Oil & Gas Company and another. Judgment for defendants, and plaintiff brings error. Affirmed.

Wm. H. England, C. T. Atkinson, L. A. Maris and Geo. S. Ramsey, for plaintiff in error.

John S. Burger, John H. Brennan, Hayes McCoy, Otto Massey, and R. H. Hudson, for defendants in error.

HARDY, C. J. Plaintiff in error commenced this action in the district court of Kay county on the 7th day of March, 1916, to have declared null and void and of no effect an oil and gas mining lease executed by her and her husband on January 9, 1911, and assigned by the original lessee to the Junction Oil & Gas Company on December 7, 1914, and to restrain defendant from interfering with plaintiff's possession of the land and praying that possession thereof be restored to plaintiff. Judgment was for defendant, and plaintiff prosecutes error.

Plaintiff claims the lease expied by its own limitations on January 9, 1916, while defendant contends it did not expire until January 22, 1916. Plaintiff further contends it was a condition precedent that oil and gas, or either of them, in paying quantities, should be produced upon and transported from the leased premises on or before January 9, 1916, before defendants' right to hold the lease or operate on the land for oil and gas would extend beyond that date, and that the uncontradicted evidence shows that the lessee had not at any time prior thereto found either oil or gas upon the leased premises in paying quantities or transported either therefrom. The court found that the lease in question was executed and delivered January 9, 1911, and inasmuch as no cross-appeal is prosecuted from this finding, we shall assume that fact to be as found. The lease was not acknowledged until June 22d, of the same year, but this fact did not prevent the lease from becoming effective upon its execution and delivery, as acknowledgement thereof was not necessary to its validity as between the parties. Section 1154, Rev. Laws 1910.

The lease contained the following provisions:

'If gas only is found in quantities large enough to transport, then party of the first part is to receive $100 a year for the product of each and every well so transported, and also free gas for drilling on the above described land for heating and lighting purposes."

"This lease shall be operative for the period of five years from this date, or so long as gas, oil or other minerals are found in paying quantities in, under, and upon said land."

A well was commenced upon the premises October 11, 1915. At a depth of 730 feet a flow of 3,000,000 cubic feet of gas was encountered on November 3d. This gas was cased off, and on November 28th, at a depth of 1400 feet, a flow of gas amounting to from 8,000,000 to 10,000,000 cubic feet was found. This was likewise cased off, and drilling operations continued. On December 21st, at a depth of 1,900 feet, a flow of approximately 3,000,000 cubic feet was encountered, which was also cased off, and drilling continued with the intention of going deeper, in the hope of finding oil, but with the intention, if oil or gas was not found in the lower sand, of returning and utilizing the gas previously found. The 2,600-foot sand in that field was not reached until January 18, 1916, when a flow of 12,000,000 feet of gas was struck. The cost of the well was $17,000. After completion of the well, defendant tendered plaintiff $100 in United States gold coin as the amount which she was entitled to receive under the terms of the lease which she declined to accept. After the 9th of January, 1916, plaintiff notified defendant that she had elected to declare the lease forfeited and executed a new lease to F. A. Heberling for a cash bonus of $5,000, in addition to which Heberling was to pay all the expenses of this litigation, including attorney's fees. The lease under which defendant claimed conferred upon lessee the right to go upon the leased premiss and search for oil and gas during the initial period or any extension thereof, and to continue operations with reasonable diligence until it was determined whether the premises were barren or whether oil and gas or either of them were found thereon in paying quantities. And while the lessees acquired no vested estate in the premises prior to the discovery of oil or gas or either of them, they had the right within the terms of the lease to continue their operations, and if, before the expiration of the five years, oil and gas, or either of them, were found upon the leased premises in paying quantities, the lessees thereby acquired a vested, though limited, estate in the leased premises for the purpose of the lease, and were thereafter entitled to produce oil and gas therefrom according to the terms and conditions of their contract. Brennan v. Hunter, 68 Okla. 112, 172 Pac. 49.

It was a condition precedent to the right of defendant to continue operations beyond the period of five years that oil and gas or either of them should be found upon the premises in paying quantities, or gas in quantities large enough to transport should be found thereon within the five years. Parafine Oil Co. v. Cruce, 63 Okla. 95, 162 Pac. 716; Wellsville Oil Co. v. Miller, 44 Okla. 493, 145 Pac. 344; Detlor et al. v. Holland, 57 Ohio St. 492, 49 N. E. 690, 40 L. R. A.

266; Murdock-West Co. v. Logan et. al., 69 Ohio St. 514, 69 N. E. 984; Huggins v. Daley, 99 Fed. 606 40 C. C. A, 12, 48 L R. A, 320; Steelsmith v. Gartlan et al., 45 W. Va. 27, 29 S. E. 978, 44 L. R. A 107, And, when defendant found gas in quantities large enough to transport within five-year period. it then became vested with a limited estate in the premises for the purpose of transporting this gas according to the terms of the lease. The lease does not necessarily mean that the gas should in fact be transported within the five years. Upon the discovery thereof in quantities large enough to transport the plaintiff was entitled to $100 per year for the product of each and every well so transported, and this sum was tendered to her by defendants in accordance with the terms of the lease. The amount of her revenue did not depend upon the amount of gas transported, but was a fixed and definite sum, with the additional privilege of using gas for domestic purposes. So long as she received payment of the $100 per annum and had the use of gas for domestic purposes she was entitled to claim no other revenue or consideration from lessee on account of the well in question. If defendant should neglect to transport the gas and should decline to pay the $100 per annum, or furnish gas for domestic purposes, then plaintiff might be in position to declare a forfeiture for nonperformance by defendant. It is apparent that if January 9th be taken as the correct date of the lease, gas in paying quantities and in sufficient quantities to transport was found before the expiration of five years. The fact that defendant cased off the gas found before January 9, 1916, and drilled deeper, shows no abandonment of these stratas of gas, because it appears that it was defendant's intention to return and utilize the gas found in the upper sands if nothing should be found at 2,600 feet. A case squarely in point is Eastern Oil Co. v. Coulehan et al., 65 W. Va. 531, 64 S. E. 531, where prior to the expiration of the lease gas was struck at a depth of 1,250 feet. After striking this gas the lessee concluded to go deeper, and a very short time after the expiration of the lease struck gas in paying quantities. It was there contended, as here, that because the operator failed to utilize the gas found in the upper sand, the lease was abandoned. and the operator was not entitled to claim the benefit of the discovery in the lower sand. This contention was denied. The discovery of gas within the terms of the lease was held sufficient to vest the right thereafter to produce gas from the premises, which right it was said might be lost by abandonment, manifested by neglect to produce oil or gas

or to pursue the work of production or further development.. In the case before us, the defendant having discovered gas in at least three separate sands in quantities large enough to transport, what was to prevent it, if the lower sand should prove unprofitable, from returning to the upper sands, and from this well. or from other wells, tapping the upper sands and producing gas therefrom as the evidence shows could have been done.

The judgment is affirmed.