# GILMER OIL CO. v. CORPORATION COMMISSION et al.

No. 26497. Sept. 29, 1936.

Champion, Champion & Fischl and Rittenhouse, Webster & Rittenhouse, for plaintiff in error.

Earl Foster, Conservation Attorney, and Stephen A. George, for defendants in error.

OSBORN, V. C. J. This is an appeal by the Gilmer Oil Company, hereinafter referred to as appellant, from an order of the Corporation Commission issued on May 16, 1935, which prohibited any operator in the Healdton oil field in Carter county from using vacuum for producing oil wells. The following parties are made defendants in error and will be referred to as appellees: Corporation Commission of Oklahoma, Reford Bond, A. S. J. Shaw, and J. C. Walton, in their individual capacities as members of said Corporation Commission, Joe O'Brien, secretary of Corporation Commission, W. J. Armstrong, conservation officer of the state of Oklahoma, and all operators and producers of oil in the Healdton field, Carter county, Okla.

On April 13, 1935, the commission gave notice that a hearing would be held on May 2, 1935, for the purpose of determining whether any or all operators producing from wells located in the Healdton oil field in Carter county should be permitted to produce such wells by means of vacuum pumps. Pursuant to said notice 15 operators were represented at said hearing. After the introduction of evidence the commission entered its findings of fact and order. We quote therefrom as follows:

"1. That ultimate recovery of oil will be greater in the Healdton oil field if the practice of pulling vacuum on producing wells is prohibited.

"2. That maximum ultimate recovery of oil, consistent with a minimum of injury to an oil-bearing sand, may be had by producing so-called stripper wells by repressuring method which contemplate the use of gas or water, than is possible by permitting producing wells to pull vacuum.

"3. That the overwhelming consensus of opinion among the lease operators of the Healdton oil field, favors a restriction which would prohibit any and all operators in the Healdton field from pulling vacuum on producing wells.

"4. That no operator of a lease or of an oil well in the Healdton oil field of Carter county, Okla., should, from and after the effective date of this order, be permitted to pull vacuum on a producing well.

"Order.

"It is therefore the order of the Commission, premises considered, that from and after the effective date of this order, no operator of any oil lease or any oil well in the Healdton oil field of Carter county, Okla., should be permitted to pull vacuum on a producing oil well.

"It is further ordered that the commission retain jurisdiction of the subject-matter herein and of the parties hereto, for such further order or orders as the commission may deem necessary in the premises."

At the outset we are met with a challenge to the jurisdiction of the Corporation Commission on the ground that the wells owned and operated by appellant in the Healdton field produce less than 25 barrels of oil per day. Appellant contends that the commission is divested of jurisdiction over such wells by section 6, chapter 131, Session Laws 1933. Said chapter is a comprehensive act relating to the conservation of oil and gas. Sections 2 and 3 of the act are as follows:

"Section 2. The term 'waste,' as used in this act, as applied to the production of oil, in addition to its ordinary meaning and in addition to the meaning given thereto by any other provisions of this act, shall include economic waste, underground waste,

including water encroachment in the oil and/or gas-bearing strata, surface waste, and waste incident to the production of oil in excess of transportation or marketing facilities, or reasonable market demands. The production of oil or gas in the state of Oklahoma in such manner and under such conditions as to constitute waste as in this act defined, is hereby prohibited and the commission shall have authority and is charged with the duty to make rules, regulations, and orders for the prevention of such waste, and for the protection of all fresh water strata and oil and/or gas-bearing strata encountered in any well drilled for oil or gas.

"Section 3. The term 'waste', as applied to gas contained in or produced from a common source of supply of oil, shall, in addition to its ordinary meaning, include the unreasonable production and/or the inefficient or wasteful utilization of gas in the operation of oil wells drilled therein, the escape, directly or indirectly, of gas from oil wells drilled therein into the open air in excess of the amount necessary in the efficient drilling, completion or operation thereof: the escape, blowing or releasing, directly or indirectly, into the open air of gas produced from wells productive of gas only, or of gas and gasoline only, drilled into any such common source of supply save only such as is necessary in the efficient drilling and completion thereof; and the unnecessary depletion or inefficient utilization of the gas energy contained in such common source of supply. In order to prevent the waste or to reduce the dissipation of the gas energy contained in any such common source of supply, the commission, in addition to its other powers in respect thereof, shall have authority to limit the production of gas from wells producing gas only or gas and gasoline only to a percentage of the daily open flow capacity of such wells that is less than the percentage of oil production allowed to oil wells drilled therein."

The primary intent and purpose of the act as a whole is to provide for the conservation of oil and gas. By sections 2 and 3 of the act the commission is vested with broad powers, and is charged with the duty of making rules, regulations, and orders for the prevention of waste. These sections do not purport to deal with proration. Section 4 of the act and subsequent sections deal in the main with the subject of proration, which is a means provided for the prevention of waste whenever the full production of a common source of supply of oil can only be obtained under conditions constituting waste. Section 6 of the act in part provides:

"* * * And provided further that regardless of anything in this act to the contrary contained or authorized the commission shall not by rule, regulation, order or otherwise reduce the allowable production from any oil well in this state below twenty-five (25) barrels of oil per day or its full production if it is incapable of producing twenty-five (25) barrels per day."

It is this proviso upon which appellant bases its contention that the commission is without jurisdiction over its wells. Giving due consideration to the various provisions of the act, and the obvious intent and purpose of the Legislature, we conclude there is no merit in the contention. We are not here concerned with proration. An examination of section 6 in its entirety discloses that it deals solely with proration. The term "allowable production" used in the above-quoted portion of the act undoubtedly refers to the production allowed by the commission where it has become necessary to prorate the wells producing from a common source of supply. To extend the meaning of the quoted language further would be to do substantial violence to the plain and obvious intention of the Legislature. It is clear that the rights of the parties involved in this case are determinable in the main by the provisions of sections 2 and 3 of the act.

The second contention is stated in the brief as follows:

"Under the 1933 Act as amended by the 1935 Act, the following jurisdictional facts were essential to the issuance of a valid order by the commission in this case: (1) That wells in the Healdton field were producing more than twenty-five barrels of oil per day: (2) the common source of supply from which such wells were producing; and (3) that waste was being committed by the method employed in producing said wells, that is, waste within the definition contained in section 2 of the 1933 Act, as amended by section 1 of the 1935 Act. The order in this case does not contain any of these essential jurisdictional findings and is, therefore, void."

The authorities cited in support of this contention deal with the proration of oil where full production cannot be had from a common source of supply without waste, and are not applicable herein. By virtue of the provisions of the statutes which are applicable, the jurisdiction of the commission in this case depends upon a showing that the method of operation of the wells involved constitutes waste. Our attention is directed to the fact that the term "waste" does not appear in the findings of the commission. But the commission found "that ultimate recovery of oil will be greater in

the Healdton oil field if the practice of pulling a vacuum on producing wells is prohibited." A loss of ultimate recovery is nothing more nor less than waste. We would not be justified in reversing the order of the commission on the ground that language used by the statute is not contained in the findings, where there are findings of the essential jurisdictional facts.

Appellant contends that the order is unsupported by the evidence. In this connection the appellant introduced evidence to the effect that the use of vacuum in its wells had no effect upon the wells on adjoining leases. Several witnesses were called in behalf of appellees. Their testimony in the main dealt with the general effect of the use of vacuum in producing wells. Evidence was offered to the effect that the use of vacuum is an obsolete method of producing oil; that as a general rule it reduces the ultimate recovery of oil from a field by reducing the gravity and viscosity of the oil; that it reduces the gas pressure, which is the motive power for the production of oil. It is evident from a review of all of the evidence that the damage to oil producing sands by the use of vacuum depends largely upon the amount of vacuum used. There was no positive evidence to the effect that vacuum, as used by the appellant company in its wells in the Healdton field for a period of many years, had resulted in damage or injury to the producing sands or had materially decreased the ultimate recovery of oil from the field. Until it affirmatively appears that the method of operation in actual use by the appellant company decreases the ultimate recovery of oil from the field, the commission is without jurisdiction to prescribe the means or method of production.

Since this proceeding was commenced prior to the effective date of article 1, chap. 59, Session Laws 1935, the provisions of chapter 131, Session Laws 1933, are determinative and controlling of the issues.

We, therefore, conclude that, while the Corporation Commission is vested with power and authority to prohibit the use of vacuum in producing oil wells where it clearly appears that such means of production will materially decrease the ultimate recovery of oil from the field, the evidence in this case does not justify the finding of the commission that waste is being committed, and that in view of such lack of evidence the commission's order prohibiting the use of a vacuum in the Healdton field is erroneous.

The order is vacated.

RILEY, BAYLESS, PHELPS, CORN, and GIBSON, JJ., concur. McNEILL, C. J., and BUSBY, J., dissent. WELCH, J., absent.

BUSBY, J. (concurring in part and dissenting in part). I concur as to the rule of law announced in syllabus 1 of the majority opinion. I dissent as to the result announced and applied in syllabus 2 and the portion of the body of the opinion corresponding thereto.

In my judgment there is sufficient evidence in the record to authorize the Corporation Commission to forbid the use of vacuum in the Healdton field and to support the view that the general and continued use of vacuum in that field will materially decrease the ultimate recovery of oil therefrom.