### GILMER OIL CO. et al. v. CORPORATION COMMISSION et al.

No. 28024.    March 29, 1938.

Rehearing Denied June 14, 1938.

96

Williams & Williams and Champion, Champion & Fischl, for plaintiffs in error.

Earl Foster, Conservation Atty., (J. B. Harper and James C. Hamill, of counsel), for Corporation Commission.

Stephen A. George and John Clark Caldwell, for F. W. Merrick, Inc., and J. B. Schermerhorn, Inc.

GIBSON, J. This is an appeal from an order of the Corporation Commission allegedly promulgated pursuant to its powers as delegated and conferred by the statutes relating to the conservation of natural resources (chapter 131, S. L. 1933, and the amendment, chapter 59, S. L. 1935).

The aforesaid order prohibited the use of vacuum pumps in the production of oil and gas in the Healdton oil field, and was based upon the issues as joined by a complaint filed on the part of F. W. Merrick, Inc., a producer in said field, and the response thereto filed by one or more interested parties. The Gilmer Oil Company and Roy M. Johnson, owners and operators of leases in the field, prosecute the appeal pursuant to sections 29 and 30, said chapter 131, S. L. 1933.

Chapter 59, S. L. 1935. aforesaid, amends sections 2 and 3 of the 1933 act, and these sections set out a number of definitions of waste as applied to oil and gas, among them, first: "The use of reservoir energy for oil producing purposes by means or methods that unreasonably interfere with obtaining from the common source of supply the largest ultimate recovery of oil." And, second: "The inefficient or wasteful utilization of gas in the operation of oil wells drilled therein, in such quantities or in such manner as unreasonably to reduce reservoir pressures, or unreasonably to diminish the quantity of oil that ultimately might be recovered from the common source of supply." The issues as joined before the commission involved but these two definitions of waste.

The plaintiffs in error, who will be referred to hereafter as respondents, say that the order of the commission is not affirmatively supported by the evidence and that said order is in excess of the commission's jurisdiction. The evidence, it is charged, supports neither the finding that the use of vacuum in the Healdton field will unreasonably interfere with obtaining from the common source of supply the largest ultimate recovery of oil, nor the finding that the use of vacuum pumps constitutes a wasteful utilization of natural gas.

In a recent decision, Gilmer Oil Co. v. Corporation Commission, 177 Okla. 505, 61 P.2d 22, involving identical issues arising approximately two years prior to the institution of the present proceedings, this court, in contemplation of the act prior to its amendment in 1935, held that the Corporation Commission was vested with power and authority to prohibit the use of vacuum in producing oil wells where it is shown that such means of production is materially decreasing the ultimate recovery of oil, thereby constituting waste. The 1935 amendment would not interfere with that holding, nor does it require a modification of the rule there announced. The evidence in that case failed to show that the vacuum pumps as then employed in the Healdton field had resulted in damage or injury to the producing sands or had materially decreased the ultimate recovery of oil from the common source. The court there said in effect that until it should affirmatively appear that the method of operation in actual use decreases the ultimate recovery of oil, the commission would be without power to prescribe the means or methods of production. The 1935 act has not enlarged the commissioner's powers in the latter respect.

In this, as in the former case, the testimony dealt largely with the general effect of vacuum upon producing sands, the result as to increasing or decreasing production, raising or lowering gravity, decreasing the volatility or increasing viscosity, thus rendering the oil, as the case may be, more or less susceptible to recovery through the usual means of production. It is also made to appear here, as in the former case, that the extent of damage to producing sands by use of vacuum depends largely upon the degree of vacuum employed.

There is no positive evidence in this record that the use of vacuum as employed in Healdton for many years has resulted in damage to the sands so as to unreasonably

interfere with obtaining from., the common source of supply the largest ultimate recovery of oil. Neither is there positive evidence to show that the use of vacuum pumps produces gas in such quantities or in such manner as to constitute an unreasonable, inefficient, or wasteful utilization of gas in the operation of oil wells such as would unreasonably reduce the reservoir pressure or would unreasonably diminish the quantity of oil that ultimately might be recovered from the common source.

Witnesses of long experience were produced who testified that vacuum was an improper method of production, that it tended unduly to decrease or to ultimately destroy the natural reserve energy of the sands. Other methods such as water or gas repressure were compared and held by them as more likely to accomplish full recovery of the oil. But there were no authentic instances presented to substantiate the opinions so offered. Their conclusions were based almost entirely upon common surmise unsupported by actual experience. None could say he had proved his theory; some admitted no one could say whether vacuum unreasonably, or otherwise, reduced the ultimate recovery. But all seemed to agree that the use of vacuum should be officially controlled, not so much on account of its damaging effect upon the sands, but more as an equitable process between neighboring producers.

It is true, there is a disagreement here as to what method is the most efficient and proper looking toward ultimate recovery, but there is no evidence that the use of vacuum is more harmful in this respect than other methods may prove to be. Witnesses have merely offered opinion testimony unsupported by established facts.

Looking at the testimony from the standpoint of respondents' contentions, we find that to abandon vacuum after years of use is highly injurious to the wells, decreases production, and results in great financial loss. It is shown that the method has been employed in other fields (Pennsylvania) over a period of more than 60 years with successful results from every known point of view. It has been used with success and without known injurious results in the Kiefer field in Creek county. In the Healdton field the respondents have employed it over a period of 20 years, and production has been maintained at a level seldom accomplished by other means. Who may say authoritatively without actual experience that these respondents are un-

reasonably interfering with "obtaining from the common source of supply the largest ultimate recovery of oil?" Without positive proof of such interference, to require these producers to abandon their present method, junk their equipment, and to compel them to purchase gas for the operation of their wells when by means of vacuum they can produce a sufficient supply therefor, and to force them ultimately to suffer great financial loss, would result in taking their property, as they contend, without due process of law.

We are required to regard the order of the commission as prima facie valid, reasonable, and just (section 28, Act 1933, supra), but we are of the opinion that the order in the instant case is in that respect not sufficiently supported by positive evidence.

The order is vacated.

OSBORN, C. J., BAYLESS, V. C. J., and WELCH, CORN, and DAVISON, JJ., concur. RILEY, PHELPS, and HURST, JJ., dissent.