GODFREY v. McARTHUR et al.

*96 P. 2d 322.*

No. 28576. Sept. 26, 1939.

Rehearing Denied Dec. 5, 1939.

J. D. Lydick, R. F. Barry, and W. F. Collins, for plaintiff in error.

Everest, McKenzie & Gibbens and J. Forrest McCutcheon, for defendants in error.

GIBSON, J. Plaintiff in error brought this action in the district court of Oklahoma county against defendants in error to recover damages for breach of contract to drill an oil and gas well. The parties in error will be designated as plaintiff and defendants, respectively, or by name.

Demurrers to plaintiff's evidence were sustained and judgment rendered for defendants dismissing the action.

The evidence as produced under the issues discloses that on May 1, 1930, J. C. Pearson executed an oil and gas lease covering two parcels of land in Oklahoma City to one Holmes, who soon thereafter assigned to the plaintiff. For convenience the parcels are referred to as tracts No. 1 and No. 2.

On January 5, 1931, the plaintiff and his lessor, Pearson, joined in a contract with other parties whereby tract No. 1 was communized with other parcels for the purpose of drilling a well. By assignment the defendant McArthur became lessee of this community block, and on June 9, 1931, completed a producing oil well thereon. Tract No. 2 was not included in this block and did not participate in the production from the well.

Under written contract of September 9, 1931, plaintiff agreed to assign to McArthur his lease on tract No. 2, along with leases on certain adjacent parcels, for a consideration of $7,500 to be paid when the particular area should be zoned by city authorities for oil and gas development and permit to drill thereon issued, and the further consideration of $32,500 to be paid out of one-fourth of the oil as produced. McArthur agreed to use due diligence in having the land brought into a drilling zone and in obtaining a permit as aforesaid. This contract is the subject of the present controversy.

Under date of June 9, 1933, the city passed ordinance No. 4475 zoning the territory in question for oil and gas. The emergency clause in the ordinance failed of passage and certain parties sought a referendum. Considerable legal controversy arose over the sufficiency of the referendum petition. The action of the city clerk in sustaining a protest of said petition found its way to this court, where the matter was pending at the time of trial of this case. However, an

ordinance, No. 4578, bearing the emergency and embodying the same provisions as No. 4475, was enacted September 14, 1934.

In 1933, subsequent to the passage of ordinance No. 4475 and prior to the enactment of No. 4578, McArthur procured a drilling permit from the city board of adjustment, but, dissatisfied with the action of the board in annexing certain adjacent parcels to his block, he appealed to the district court in due course, where his contentions were sustained and permit ordered to issue to him. That judgment became final in January, 1934, and the defendants thereupon paid plaintiff the $7,500 above mentioned.

The contract provided that McArthur commence drilling operations on the block of leases within 60 days after permit was issued, and complete the same with due diligence. In event McArthur was unable to secure a permit from the city or from the district court he was given the privilege of appealing to the Supreme Court or to reassign the leases to the plaintiff, in which event the parties were to be released from the contract.

Plaintiff made numerous demands upon defendants to commence the well, and defendants promised to commence operations. Defendants failed, however, to drill, and retained the leases until January 15, 1936, when they were reassigned to plaintiff.

Large quantities of oil had been taken by defendants and others from the lands adjacent to the tract in question, but by 1936 the sand was no longer productive.

Plaintiff charges breach of the contract and seeks damages in the sum of $32,500.

Defendants say the demurrers were properly sustained for the reason, first, that plaintiff's lease on tract No. 2 had expired by its own terms when he made the contract with McArthur.

In this we are unable to agree. Regardless of the primary term of the lease as expressed therein, it was at all times in full force and effect for the reason that the same had been preserved by the production of oil from the well located on the block of which tract No. 1 of the leased premises was a part. The general rules of law applicable to development under oil and gas leases do not apply in their entirety to leases on lands located within the corporate limits of Oklahoma City. All such leases are subject to the delegated police powers of the city to regulate and control the manner in which the same shall be operated. All valid existing and future ordinances become a part of the lease contract, and the parties thereto must abide by the same as if written into the lease.

It has not been disputed, but it seems to be assumed, by the parties, that a leased tract may be divided as in this case for the purpose of satisfying city drilling regulations. In fact, our former decisions reveal that the city ordinances authorize such division even without the consent of the owner or lessee of the tract. Where a lease provides that the same shall remain in force as long as oil or gas is produced from the leased premises, and thereafter a portion of said premises, by order of the city authorities, is annexed to a drilling block and production is had therefrom, the result with reference to preserving the entire lease by production is the same as in the ordinary case where production is had on premises outside the city under a lease of like provisions. Where, as here, the lessor participates in production from a portion of his leased premises, the lease on the entire acreage therein described will be preserved throughout the period of such production subject to the covenants contained in the lease contract. Such is one of the many conditions that must be assumed by the parties by reason of the extraordinary circumstances attendant upon drilling within the city, and the unforeseen exigencies that are certain to arise therefrom.

By reason of the circumstances aforesaid, the lease, with reference to the term

thereof, is governed by the rule applied in the ordinary case. We find it stated in Roach v. Junction Oil & Gas Co., 72 Okla. 213, 179 P. 934. There the court had under consideration a lease for a term of five years and as long thereafter as oil or gas was produced in paying quantities. The rule reads as follows:

"After gas was found upon the leased premises within five years from the date thereof in paying quantities the lessee thereby became vested with a limited estate in the leased premises for further operations in accordance with the terms of the lease."

After production is found in time to preserve the lease, the question with reference to its extension and operation over all the premises described therein is one of diligent and proper development according to the covenants contained in the lease; it is a question of forfeiture, not one of expiration.

Next, the defendants say that ordinance No. 4475 was not in force when McArthur made application for a drilling permit because the operation of the ordinance was suspended by the referendum petition, and since there was no ordinance in force permitting drilling in the particular zone, the district court was without jurisdiction to direct issuance of the drilling permit.

That question is not material to the issues of this case. If defendants believed their permit was not legally obtained, the fact remains that a legal permit was obtainable subsequent to the enactment of ordinance No. 4578 on September 14, 1934. Though their contract with plaintiff obligated them to seek a permit, they did not see fit to apply for one after all doubt of legality of such permit had been removed. The oil and gas lease was still in force at that time, and defendants retained the same.

The defendant Black Gold Petroleum Company asserts that it was not a party to the contract between plaintiff and McArthur and that there was no evidence to indicate that it assumed any of the obligations contained in said contract, or that the same was made especially for its benefit.

The evidence shows that McArthur was an executive officer of the defendant corporation, and the stipulated facts show that he held the assignment at all times for the benefit of the company. The latter knew of the contract, and there is ample evidence to support a finding that the company accepted the assignment burdened with the obligations contained in the contract which were in fact the consideration for the assignment. It paid a portion of that consideration, accepted the benefits of the contract, yet denied its obligation to perform the remainder of the undertaking.

We find no merit to the contention that the contract was illegal in its inception in that no ordinance existed permitting the drilling of a well on the premises in question. The contract specifically recognized the absence of such ordinance and was made in anticipation of a future one authorizing such drilling. The contract was not made for an evil purpose nor in violation of law. Such contracts are not of that illegal character which renders them unenforceable in the courts. The rule applicable is stated in 13 C. J. 424, § 359, as follows:

"A contract for an act prohibited by the existing law, but which is shown to have been made with reference to the contemplated procuring of a special statute making the act valid, the enactment of which was actually procured before the contract was performed, is not to be regarded as illegal."

See, also, Parrott v. Gulick, 145 Okla. 129, 292 P. 48.

The trial court erred in sustaining the demurrers to plaintiff's evidence. The judgment is reversed and the cause remanded for a new trial.

BAYLESS, C. J., and RILEY, OSBORN, and DAVISON, JJ., concur.