McCLAIN et al. v. HARPER et al.

No. 34802. May 6, 1952.

*244 P. 2d 301.*

438

W. R. Wallace, Jr., Oklahoma City, for plaintiffs in error.

Robinson, Shipp, Robertson & Barnes, by T. Murray Robinson, Oklahoma City, for defendants in error.

DAVISON, J. By this suit, plaintiffs seek to quiet their title to an 80-acre tract of land in Oklahoma county, Oklahoma, as against oil and gas leases thereon, owned by defendants as assignees, because of nondevelopment during the primary term thereof. The parties are referred to herein in the same order as they appeared in the trial court. The facts were stipulated.

Plaintiffs were the owners of the S. ½ of the S. W. ¼ of sec. 12, twp. 12N., R. 2W., in Oklahoma county, Oklahoma, and as such, on November 16, 1944, executed an oil and gas lease thereon which was assigned to the defendants. This lease was for a primary term of five years or as long as oil or gas was produced therefrom. One of the plaintiffs, who did not sign the lease, executed one later, expiring on the same date, and stipulated at the time of trial that a determination of the rights of the parties, under the above described lease, would also determine his rights.

Defendants also held a lease covering the north half of said quarter section with the right to pool or communize it with plaintiffs' land for the purpose of developing and operating it in the production of oil and gas. The title to this north 80 acres and the terms of the lease covering it are not here involved and have no bearing on this case. The object of this litigation is to determine the rights of the parties in the south 80-acre tract.

The lease executed by plaintiffs provided that:

"* * * If at the expiration of the primary term oil, gas or other minerals is not being produced on said land but Lessee is then engaged in drilling or re-working operations thereon, the lease shall remain in force so long as operations are prosecuted with no cessation of more than thirty (30) consecutive days, and if they result in the production of oil, gas or other minerals so long thereafter as oil, gas or other mineral is produced from said land. * * *"

And, further, by a typed-in paragraph, that:

"* * * At lessee's option, the land hereby leased may be pooled with all or any portion of the mineral estate or estates in and under the Southwest Quarter (SW1/4) of Section Twelve (12), Township Twelve (12N) North, Range Two (2W) West, I. M., and all royalties payable to such communized interests shall be divided and paid to the several owners thereof in the proportion that the interest owned by each such owner bears to the entire interest so communized and, after such communization, all interests so communized may be operated and developed without regard to the boundary lines of any separate leasehold tract within the communized area. The rights herein provided are in addition to those conferred by paragraph nine hereof. * * *"

In September, 1949, the defendants executed a pooling declaration unitizing or communizing the entire quarter section. No well was drilled or commenced on the south half thereof, but, on November 8, 1949, about one week before the expiration of the primary term of the lease above described, defendants commenced operations for the drilling of a well on the north half of the unitized 160 acres and diligently prosecuted such drilling operations until said well reached the known producing horizon within the area and, after setting pipe therein, performed various operations to make such well productive of oil and gas in paying quantities. Although such production had not been obtained, said operations were still in progress at the time the petition herein was filed.

The trial court rendered judgment for defendants and plaintiffs have perfected this appeal therefrom. Although subdivided and argued under several

propositions, the sole question for determination by this court is: Where the lessees of two separate tracts of land under separate oil and gas leases have, by agreement with the lessors, pooled or unitized the entire property for the distribution of royalty from any well thereon, does the commencement of a well on one tract operate to extend the primary term of the lease on the other? Our conclusion is that it does.

No case is cited by the parties, nor do we, upon independent investigation, find where the same question has been before the courts heretofore. It is definitely settled in this jurisdiction that the grant to lessee "of the right to commence a well at any time within the term fixed by the lease contract, by necessary legal implication, carried with it the right to complete the well after the period fixed for commencement had expired, subject, however, to abandonment of that right by failure to proceed in good faith and with diligence." Simons v. McDaniel, 154 Okla. 168, 7 P. 2d 419. In the instant case, that right is also provided for by the terms of the lease itself. Thus, had the well, in the instant case, been started or commenced on the south 80 acres, the primary term of the lease would have been extended to the time such well was completed. In the reported case, as in the case at bar, the lease was what has become to be known as an "unless" lease and rentals had been paid each year extending the time within which a well might be commenced. If a well be commenced within the period for which the rentals have been paid and is completed with reasonable diligence, and production results, the lease would continue as long as oil or gas was produced. Dow v. Worley, 126 Okla. 175, 256 P. 56.

Thus, there are two situations which prevent the expiration of the lease contract at the end of the primary term. These are: (1) The diligent development of the property by drilling operations in progress at the end of the primary term, as discussed in the foregoing paragraph; (2) Actual production from the leased premises. This latter situation was the gist of the case of Roach v. Junction Oil & Gas Co., 72 Okla. 213, 179 P. 934. The effect of these two conditions is definitely fixed and established in this jurisdiction. In the case of Godfrey v. McArthur, 186 Okla. 144, 96 P. 2d 322, the situation was one wherein several parcels of land (city lots), covered by several leases, were pooled or unitized and production was had from one parcel but the royalty therefrom was proratably shared by all lessors whose lands were within the unit. It was held that such production was attributable to all parcels and the rule in the Roach case, supra, was applicable. That is, that the term of the several leases was extended, by production from the unit, regardless of where, in the unit, the well was located. It is logical to conclude that the rule, which applies when production has been obtained within the primary term of the lease, should, likewise, apply when, within said time, the lessee has, in good faith, commenced drilling operations in an attempt to obtain production in which all lessors would share. Therefore, the rule in the Dow v. Worley case, supra, is applicable here. The defendants, having commenced a well upon any tract of land, pooled or unitized with that of the plaintiffs, within the primary term of the lease on plaintiffs' land, are entitled to the same protection from expiration of the lease contract as though the well were located upon the lands specifically described in plaintiffs' lease. As was pointed out in the Godfrey v. McArthur case, supra, if production is obtained from the well, the further extension and operation of the lease depends upon diligent and proper development according to the covenants contained in the lease; "it is a question of forfeiture, not one of expiration."

The judgment is affirmed.

HALLEY, V. C. J., and WELCH, CORN, GIBSON, JOHNSON, O'NEAL, and BINGAMAN, JJ., concur.