**L. M. TRAWICK and Melville F. Boddie,
Plaintiffs in Error,**

v.

**E. L. CASTLEBERRY et al., Defendants
in Error.**

No. 35676.

Supreme Court of Oklahoma.

May 5, 1953.

Rehearing Denied July 20, 1954.

F. R. James, Stroud, Joseph A. Moran, Tulsa, for plaintiffs in error.

Walter G. Wilson, Chandler, for defendants in error.

WILLIAMS, Justice.

In February, 1944, plaintiffs herein executed an oil and gas lease for a primary term of five years covering land described by metes and bounds which consisted of approximately 80 acres in the southeast part of the described southeast quarter section of land. Said lease is now held by defendants herein.

Shortly thereafter, a gas well was completed on the northwest quarter of said quarter section, on lands not covered by the lease in question. In September, 1944, the entire southeast quarter of the section, including all lands covered by the lease in question, was communitized for the production of gas, in order to comply with an order of the Petroleum Administrator for War.

Some time prior to September, 1945, oil was discovered in said gas well, and thereafter such well produced oil instead of gas. In that month, a second "Declaration of Communitized Area" was executed by the then lessee covering only the northwest quarter of the southeast quarter of the described section of land. This included only about 7 acres of plaintiffs' lands described in the lease.

On October 11, 1951, plaintiffs filed their petition in the case at bar, alleging that the lease had expired, failure diligently to develop the lease, that the lease had been forfeited because defendants had allowed the minerals under the lands to be drained by nearby wells, and asking that the lease on the remaining 73 acres of land not included in the communitized area be cancelled. Defendants filed answers amounting to general denials, and trial was had on the issues thus joined. Plaintiffs recovered judgment in the lower court and defendants have duly appealed.

Parties are referred to herein as in the trial court.

In addition to the facts above set out, the evidence showed that there was no other well on the entire southeast quarter; that during the entire primary term of the lease in question, delay rental payments were made; that the lease gave to lessees the right to "pool or combine the acreage covered by this lease *or any portion thereof* with other land, lease or leases in the immediate vicinity" at the option of lessees, or when they might be required to do so by governmental authority, and that "the entire acreage so pooled into a tract or unit shall be treated for all purposes, except the payment of royalties on production from the pooled unit, as if it were included in the lease. *If production is found on the pooled acreage, it shall be treated as if production is had from this lease, whether the well or wells be located on the premises covered by this lease or not.*" (Emphasis supplied.) Evidence also showed that plaintiffs accepted and retained royalty payments on production from the pooled or communitized acreage, to the extent of their 7 acre interest therein.

The primary question for our determination is: when only part of the lands covered by an oil and gas lease are included in a communitized area, and production is had therefrom and payments made thereon, is such production sufficient

to extend the primary term of the lease contract as to the portion not communitized?

Pursuant to the plain terms of the lease contract above quoted, we must conclude that it is.

This court considered a very similar question in Godfrey v. McArthur, 186 Okl. 144, 96 P.2d 322, 323. The lease involved in that case did not contain a "pooling clause" such as the one from which the above quotations are taken. It covered two different tracts of land in Oklahoma City. Pursuant to an Oklahoma City ordinance, tract number one was included within a communitized area from which production was had; at the trial of the case, lessor contended that the lease had expired as to tract number two because it was outside the communitized area. In ruling to the contrary, this court said:

"Where an oil and gas lease upon land located in Oklahoma City provides that the same shall remain in force as long as oil or gas is produced from the leased premises, and thereafter by order of the city authorities a portion of said land is annexed to a drilling block and production is had from said block and is participated in by the lessor, the lease on the entire tract therein described will be preserved throughout the period of such production, subject to the covenants contained in the lease."

In the body of the opinion, the court said:

"* * * All valid existing and future ordinances become a part of the lease contract, and the parties thereto must abide by the same as if written into the lease."

This court cited the Godfrey case, supra, with approval in the later case of McClain v. Harper, 206 Okl. 437, 244 P.2d 301, 303, wherein it was said with regard to production from a communitized area:

"* * * It was held that such production was attributable to all parcels and the rule in the Roach case [Roach v. Junction Oil & Gas Co., 72 Okl. 213, 179 P. 934], supra, was applicable. That is, that the term of the several leases was extended, by production from the unit, regardless of where, in the unit, the well was located."

Plaintiff contends that the rule announced in the Godfrey case is not applicable here, for the reason that in that case, the court was considering an ordinance of Oklahoma City, and that no such ordinance is involved in the case at bar. However, the ordinance was pertinent in such case only because it was held to be an implied part of the lease contract; in the instant case, the right to communitize is an express part of the contract. It is axiomatic that rights acquired by virtue of express provisions of contracts are just as enforceable as rights acquired under implied provisions.

Plaintiff contends that execution of the second Declaration of Communitized Area constituted a novation; that when gas was no longer produced, the first Declaration of Communitized Area ceased to operate and "extinguished the pooling" of the 73 acres not covered by the new declaration. Granting for purposes of argument only that such contentions are true, we are unable to see how such argument is relevant in the situation here presented. Both declarations were executed during the primary term of the lease, and it is not contended, and the record does not show, that lessees were required to keep a declaration of communitized area in force at all times. There is no contention that the lease expired by reason of non-payment of delay rentals.

Plaintiffs' second allegation is that the lease should be declared forfeited because lessees have allowed drainage. An examination of the record shows that there is a total absence of evidence on this issue, and we will not consider it further, except as noted below. As to this proposition, the following rule is applicable:

"Where there is any evidence reasonably tending to support the findings of the trial court, they should not be disturbed by the Supreme Court; but where after a careful examination of

all the evidence in the case, it is found that there is not any competent evidence to sustain the findings, the cause will be reversed." American National Bank of Stigler v. Funk, 68 Okl. 169, 172 P. 1078, 1079, L.R.A.1918F, 1137.

■ Plaintiffs' last allegation is that the lease should be declared forfeited because the lessees were not diligent in developing it. In this connection, it is argued that it was not necessary for plaintiffs to prove drainage, or that additional wells would be profitable. Plaintiffs do not cite authority for their contention that it was not necessary for them to prove drainage, but they cite Colpitt v. Tull, 204 Okl. 289, 228 P.2d 1000 to the effect that

"Where there has been an unreasonable delay in drilling additional wells on oil and gas lease, plaintiffs seeking cancellation of lease for nondevelopment are not required to prove the additional wells would have been profitable." (Editor's syllabus.)

This principle of law was fully discussed in Doss Oil Royalty Company v. Texas Company, 192 Okl. 359, 137 P.2d 934, also cited by plaintiffs. It was further clarified in Magnolia Petroleum Co. v. Rockhold, 192 Okl. 628, 138 P.2d 809, 810, wherein this court said:

"Where production is obtained during the primary term of a lease, and it is disclosed that the lessee has failed and refused to fully develop the leasehold within a reasonable length of time and there has been unreasonable delay in development a prima facie case is made in an action by the lessor to cancel the undeveloped portions thereof *and the burden is upon the defendant lessee to show that the lease has been developed in the manner reasonably to be expected of an operator of ordinary prudence.*" (Emphasis supplied.)

Granting for purposes of argument only that an unreasonable length of time had passed in the instant case without the drilling of additional wells, plaintiffs still are not entitled to a cancellation of the lease in question, for reasons which are set out below.

■ In the case at bar, there was uncontradicted testimony to the effect that the well drilled on the northwest quarter of the southeast quarter had not paid itself out; that several dry holes had been drilled in the immediate vicinity of the lease in question; and that the opinion of the experienced oil men testifying was that additional wells on the lease in question would not be profitable. This was the only evidence in the record on the question of whether additional wells would have been profitable. We hold therefore that the defendant fully discharged the "burden of the evidence" which shifted to it by virtue of the holding in Magnolia Petroleum Co. v. Rockhold, supra.

Consistent with the views expressed in Shell Oil Company v. Howell, 208 Okl. 598, 258 P.2d 661, we think plaintiffs wholly failed to discharge their burden of showing cause for the extraordinary relief of cancellation or forfeiture of the lease, and that the trial court should have so concluded, and rendered judgment for the defendants. Its judgment to the contrary, is therefore hereby reversed and the cause is remanded to said court with directions to set it aside and render judgment for the defendants.

The judgment of the trial court is reversed.

HALLEY, C. J., JOHNSON, V. C. J., WELCH and CORN, JJ., concur.

ARNOLD and BLACKBIRD, JJ., dissent.