**SIMPSON et al.**

v.

**STANOLIND OIL & GAS CO.**

**No. 4743.**

United States Court of Appeals
Tenth Circuit.

Feb. 11, 1954.

George N. Otey, Ardmore, Okl. (Otey, Johnson & Evans, Ardmore, Okl., on the brief), for appellants.

Coleman Hayes, Oklahoma City, Okl. (Norton Standeven, Oklahoma City, Okl., on the brief), for appellee.

Before PHILLIPS, Chief Judge, and BRATTON and PICKETT, Circuit Judges.

PHILLIPS, Chief Judge.

On June 27, 1947, Simpson and Fell, as lessors,[1] executed and delivered to W. W. McClure, as lessee, an oil and gas lease covering the E½ of the SE¼ of the NE¼ of S. 28, T. 1 S., R. 3 W. in Carter County, Oklahoma, which reserved a ⅛ royalty to the lessors. It provided that the lease should remain in force for a term of five years and as long thereafter "as oil, gas, casinghead gas, casinghead gasoline or any of them is produced." It further provided:

"Notwithstanding anything in this lease contained to the contrary, it is expressly agreed that if lessee shall commence drilling operations at any time while this lease is in force, this lease shall remain in force and its term shall continue so long as such operations are prosecuted and, if production results therefrom, then as long as production continues."

On April 30, 1952, the Corporation Commission of the State of Oklahoma, pursuant to 52 Okl.St.Ann. § 87.1, entered a spacing order under which 40-

---

1. Hereinafter called the lessors.

acre drilling units were created and the permitted allocation for a Goodwin Sand well was the southwest 10 acres of each 40-acre drilling unit. The order embraced the tract of land covered by the lease.

On September 30, 1947, McClure assigned the lease to Stanolind Oil and Gas Company.[2]

Prior to the expiration of the primary term, the drilling of a well was commenced on the land covered by the lease. It was not originally contemplated that such well would be drilled to the Goodwin Sand. When the well reached the Deese Sand and it was found unproductive, Stanolind continued the drilling of the well to the Goodwin Sand. It encountered that sand about September 14, 1952, and completed the well in that sand as a commercial producer on September 23, 1952, and thereafter continued to produce oil and gas from the well.

On December 12, 1952, Stanolind filed an application with the Corporation Commission seeking a location exception and permission to complete and produce the well. After notice and hearing, at which the lessors appeared by their attorney and objected to the entry of any order which would adversely affect their rights, the Corporation Commission, on March 10, 1953, found that the well would not have any geological or structural advantage over a well drilled at the permitted location and made an order by which Stanolind was permitted and authorized to complete and produce the well "in the Goodwin or 3-C Sand common source of supply."

Thereafter, the lessors commenced this action to recover damages for an alleged breach of the lease and in their complaint alleged the facts above stated. In its answer Stanolind incorporated a motion to dismiss on the ground that the complaint failed to state a claim upon which relief could be granted. The trial court granted the motion and entered judgment for Stanolind. D.C., 114 F. Supp. 731.

52 Okl.St.Ann. § 87.1(d) in part provides:

"The drilling of any well or wells into any common source of supply for the purpose of producing oil or gas therefrom, after a spacing order has been entered by the Commission covering such common source of supply, at a location other than that fixed by said order is hereby prohibited. The drilling of any well or wells into a common source of supply, covered by a pending spacing application, at a location other than that approved by a special order of the Commission authorizing the drilling of such well, is hereby prohibited. The operation of any well drilled in violation of any spacing so entered is also hereby prohibited."

The theory of the lessors is that the statutory provision quoted above became a part of the oil and gas lease; that the drilling of the well into the Goodwin Sand as a commercial producer was a violation of the original order of the Corporation Commission and therefore was a violation of the terms of the lease; that had the well not been drilled as a commercial producer in the Goodwin Sand the lease would have terminated not later than September 30, 1952, and that they would have then owned the full title to all the oil, gas and other mineral interests in the land, freed from the lease.

It should be observed that the lessors do not seek cancellation of the lease, but only damages for its alleged breach. They seek to retain the benefits flowing from the development of the lease and the drilling of a profitable, producing oil and gas well on the lease by Stanolind and the royalties that will accrue to them under the lease, and, at the same time, they seek to recover damages for an alleged breach of the lease equal to the mineral rights that would have been reinvested in them had the lease been terminated.

2. Hereinafter called Stanolind.

■ The primary purpose of the Oklahoma statute is to prevent waste and effect conservation of oil and gas.[3] The objects and purposes of the statute have no relation to the termination of oil and gas leases or to the continuation of such leases beyond the primary term by the drilling of wells and the production of oil and gas therefrom. The statute was not designed to deal with or affect the right of the lessor under an oil and gas lease to cancel it for nondevelopment, nor the right of the lessee to extend the lease beyond the primary term by the drilling of a well and the production of oil and gas therefrom.

That the violation of the statute and the order by Stanolind did not and could not result in any waste and did not result in any of the consequences which the statute was designed to guard against and prevent is conclusively shown by the order of the Corporation Commission of March 10, 1953.

The purpose of the lease was to obtain development of the land covered thereby and the production of oil and gas therefrom in commercial quantities. That purpose has been attained, to the benefit of the lessors. Had the well been abandoned when the sands above the Goodwin Sand were found to be nonproductive, the lessors would then have had the right to cancel the lease, but they then would have had an undeveloped tract of land with a dry hole thereon. They now seek the benefits of the developed lease, with a producing well thereon, and at the same time seek to recover the value of $15/16$ of the oil and gas rights.[4] In substance, they seek to recover the equivalent of cancellation in money damages and at the same time to retain the benefits of the developed lease, with a producing well thereon.

■ Moreover, the lessors do not seek to recover damages for injuries caused by the drilling of the well to the Goodwin Sand at an unauthorized location; rather, they seek to recover the value of a right they say would have inured to them had such unauthorized well not been drilled, namely, the right to terminate the lease. We think they indulge in an unwarranted assumption. Had Stanolind, after the well was drilled to the nonproductive Deese Sand and before drilling into the Goodwin Sand, proceeded diligently to obtain an exception order from the Corporation Commission and then immediately continued the drilling of the well to the Goodwin Sand, the lease, in our opinion, would not have terminated, because we think, under the circumstances, that would have constituted completing the well with reasonable diligence.[5]

We conclude that the lessors are not entitled to the relief they seek.

The question remains: Are they entitled to recover any damages? The drilling of the well at the unauthorized location resulted in no loss or injury to the lessors and other owners of mineral interests in the common source of supply. The result to them is no different than it would have been had the order of the Corporation Commission of March 10, 1953, been made before the well was completed to the Goodwin Sand. Such order ratified and made lawful the drilling of the well. None of the consequences which the statute was designed to guard against and prevent have occurred.

We, accordingly, conclude that the drilling of the well, admittedly unlawful until ratified and made lawful by the Corporation Commission's order of March 10, 1953, resulted in no actionable injury to the lessors, and that they are not entitled to recover any damages.

Affirmed.

3. Gilmer Oil Co. v. Corporation Commission of Oklahoma, 177 Okl. 505, 61 P.2d 22, 24.

4. The royalty was reduced from ⅛ to 1/16 by the spacing order of the Corporation Commission.

5. Simons v. McDaniel, 154 Okl. 168, 7 P.2d 419, 420–421; Champlin Refining Co. v. Magnolia Petroleum Co., 178 Okl. 203, 62 P.2d 249, 250; McClain v. Harper, 206 Okl. 437, 244 P.2d 301, 303; Summers, Oil and Gas, Perm.Ed., Vol. 2, § 349, p. 261.