**Fox v. Wainoco Oil and Gas Company**

*Joseph E. Altomare*, for plaintiffs.
*Sean Cassidy*, for defendant.

WALKER, *J.*, April 22, 1986—On September 1, 1973, Robert W. List and Barbara J. List, his wife, as lessors, entered into an oil and gas lease with Royal Resources Corporation, as lessee, covering 70 acres, more or less, in Rome Township, Crawford County, Pa. Plaintiffs are the successors in title to a portion of the List tract and are, therefore, the owners of whatever interests the lessors retained in the oil and gas lease as to the land now owned by them. The lessee's interest in the oil and gas lease was assigned to Columbia Gas Transmission Corporation and then subleased by Columbia Gas to defendant herein. Various interests have since been assigned by defendant to other entities as set forth in paragraph 4 of defendant's answer, but those assignments have no material bearing on the issue before us.

On August 16, 1982, defendant executed a unit designation unitizing the lease in question with certain adjoining property that had been leased from one Merlin F. Kunz. The unitization agreement was recorded in Crawford County on August 3, 1983, and sometime prior to September 1, 1983, defendant drilled a well on the unit in which oil or gas was found in paying quantities, and oil and gas operations have continued to be conducted on the unitized premises since that time.

Plaintiffs brought this action to quiet title to have the expiration of the oil and gas lease on their property judicially determined since the well on the unit was not drilled on property owned by plaintiffs.

The issue presented is whether the drilling of a well on property that has been unitized with adjoining property under a provision in an oil and gas lease extends the term of the leases in the unit for so long as oil and gas are produced in paying quantities. This is apparently a case of first impression in this commonwealth although it has been addressed in other jurisdictions.

The resolution of the problem depends upon the construction of two paragraphs of the lease and their interaction with one another. Paragraph 2 is the habendum clause and reads as follows:

"2. It is agreed that this lease shall remain in force for a primary term of 10 years from this date and as long thereafter as operations for oil or gas are being conducted on the premises, or oil or gas is found in paying quantities thereon, or any formation underlying the herein leased land is used for storage of gas as provided under paragraph 7 hereof."

The unitization clause is found in paragraph 8 of the lease in the following language:

"8. Lessor further grants to the lessee, his heirs and assigns, the right to unitize this lease with other leases to form a drilling unit or units according to the rules and regulations which may be adopted for the proper development and conservation of the field. In the event his lease is so unitized, the lessor agrees to accept in lieu of the royalty hereinbefore recited such proportion of the royalty above provided as the acreage covered by the lease bears to the total acreage comprising the unit."

There is nothing in the lease specifically providing that where the producing well is drilled on other property within the unit it acts as an extension of the habendum clause beyond the primary term of 10 years as to all leases in the unit. It is plaintiffs' contention that since the lease is silent on this sub-

ject upon the expiration of the primary term on September 1, 1983, the lease terminated and they are entitled to the judgment on the pleadings that they now seek. Defendants, on the other hand, take the position that where the lease is silent, the drilling of a well on any portion of the unit extends all leases in the unit in accordance with the habendum clause that continues the lease for as long as "oil or gas is found in paying quantities thereon."

It is generally stated that the purpose of a voluntary pooling or unitization agreement is operational and that in order to serve that operational purpose property and contract rights must be modified to the extent necessary. 5 W. Summers, The Law of Oil and Gas, §952. In general, the underlying purpose of pooling or unitization agreements is the preservation and conservation of our national petroleum resources and the minimization of waste in production methods. In *Classen v. The Federal Land Bank of Wichita*, 228 Kan. 426, 617 P.2d 1255, 9 ALR4th 1106 (1980), the Kansas Supreme Court expressed the practical philosophy behind pooling and unitization in the following language:

"It is now common knowledge that this tired old world of ours, and our country in particular, is faced with the frightening and progressive energy crisis due principally to a shortage of petroleum reserves. This country cannot now, and will not in the foreseeable future be able to, produce even the minimum requirements of oil and gas needed to preserve our existence. With every increase in production we suffer a corresponding decrease in our petroleum energy reserves. Under these severe conditions we feel that it is incumbent on all persons, including this court, to assist in the preservation and conservation of our natural petroleum resources including production methods which will

minimize waste.

"Pooling and unitization are basically conservation measures adopted either by forced regulation in some states or by voluntary agreement. . . . The primary purpose of unitized operations is to permit proper and maximum development of the unit lands without reference to ownership boundaries and with a minimum of waste. These objectives may better be realized by the adoption of the rule that whenever a term mineral interest is voluntarily placed in a unit for the production of gas or oil and production is obtained on other land within the unit during the primary term, such production will extend the term mineral interest to the extent of the land and mineral interests included within the producing unit."

Other major oil and gas producing states have come to a similar conclusion. In *McCain v. Harper*, 206 Okla. 437, 244 P.2d 301 (1952), the court said:

"Defendants having commenced a well upon any tract of land, pooled or unitized with that of the plaintiffs, within the primary term of the lease on plaintiff's land, are entitled to the same protection from expiration of the lease contract as though the well were located upon the lands specifically described in plaintiff's lease."

In *Southerland Royalty Co. v. Humble Oil & Refining Co.,* 151 Tex. 324, 249 S.W. 2d 910 (1952), the Supreme Court of Texas said:

"Some of the legal consequences of the unitized lease between the lessors on the one hand and the lessees on the other, in the absence of express agreement to the contrary are as follows: the life of the lease is extended as to all included tracts beyond the primary term and for as long as oil, gas or other minerals are produced from any one of the tracts included in the lease; . . . In short, the parties by the

execution of a unitized lease agree that production of oil or gas from wells located on any tract included in the lease will be regarded during the life of the lease as production from each and all other tracts included therein."

Plaintiffs cite numerous cases in their brief but those cases which hold as plaintiffs would have us decide this case are cases where there is in fact contrary language in the instruments under consideration. There is no question that the parties can contract differently, but in the absence of language which shows a contrary intent, we believe that the drilling of a well on any tract in the unit satisfies the habendum clause of each tract in the unit and continues the lease in full force and effect so long as oil and gas are produced.

It is true that paragraph 8 of the lease which provides for unitization is phrased in broad general language. For example, there is no specific limitation on the amount of acreage that can be unitized, that being left to "rules and regulations which may be adopted for the proper development and conservation of the field." Such broad general language has, however, been approved in numerous cases.

In *Phillip's Petroleum Co. v. Peterson,* 218 F.2d 926 (1954), similar broad language was approved, the court saying:

"Anticipatory provisions in leases for the commitment by the lessee of such leases to unitization, of necessity must be in general terms. Neither the lessor nor the lessee has any way of knowing at the time the lease is taken the facts with respect to which it will be necessary for the lessee to apply his power. It is not practicable for the lessee to await the ascertainment of such facts."

Unlike a motion for summary judgment under Pa.R.C.P. 1035, a motion for judgment on the

pleadings under Pa.R.C.P. 1034 permits the court to enter such judgment as shall be proper on the pleadings including, where appropriate, a judgment against the moving party. In passing upon a motion for judgment on the pleadings, we must accept all well pleaded facts adverse to the moving party as true.

In the instant case, we are, therefore, required, in passing on plaintiff's motion, to accept as true the allegations of paragraph 5 of defendant's answer that there has in fact been an unitization, that a well was commenced upon the unit prior to the expiration of the primary term and that oil and gas were found in paying quantities and operations have continued. Had those allegations been set forth under new matter which probably would have been permissible pleading and plaintiffs had admitted the facts but disputed the legal inferences to be drawn from those facts, we believe that we could appropriately enter judgment on the pleadings in favor of defendant. However, in considering the entry of such a judgment, we must accept all well pleaded facts contained in plaintiffs' complaint as true. Plaintiffs in paragraph 5 of the complaint have alleged that no operations for the recovery of oil or gas were conducted upon the premises prior to the expiration of the primary term. Plaintiffs have not had the opportunity in the pleadings to dispute the allegations of paragraph 5 of the answer. We are, therefore, not in a position to enter judgment on the pleadings in favor of defendant, notwithstanding our legal conclusions.

## ORDER

And now, April 22, 1986, plaintiffs' motion for judgment on the pleadings is denied.