A. H. REIN and Gladys Rein,
Plaintiffs in Error,

v.

HUMBLE OIL & REFINING COMPANY,
a Corporation, Defendant in Error.

A. H. REIN and Gladys Rein and Frank G.
Boston, Plaintiffs in Error,

v.

HUMBLE OIL & REFINING COMPANY,
a Corporation, Defendant in Error.

Nos. 40628, 40629.

Supreme Court of Oklahoma.

March 16, 1965.

Tom Hieronymus, Woodward, for plaintiffs in error.

Coleman Hayes, Oklahoma City, Reuben Sparks, Woodward, A. L. Deaton, Tulsa, James K. Schooler, Oklahoma City, Varley H. Taylor, Tulsa, for defendant in error.

DAVISON, Justice.

The above numbered and styled appeals have been consolidated for consideration and disposition under No. 40628. The parties occupy the same relative positions in this court as they did in the lower court and will be referred to by name or as plaintiffs and defendants.

Plaintiffs appeal from judgment of the lower court decreeing two oil and gas leases owned by defendant to be valid and subsisting leases upon property and interests of plaintiffs and denying plaintiffs' actions for cancellation of such leases.

In the lower court the actions were tried and determined by the trial judge on stipulations of facts. The stipulations reflect that plaintiffs, A. H. Rein and Gladys Rein, are the owners of the surface and one-half the mineral rights in the SW¼ and the W½ NE¼, all in Sec. 8, Township 17 North, Range 18, W.I.M., in Dewey County, Oklahoma, with right to lease the remaining one-half mineral rights in said W½ NE¼, Sec. 8, which is owned by the plaintiff, Frank G. Boston.

On July 2, 1952, plaintiffs Rein executed and delivered two oil and gas leases covering the above described properties and defendant owns these leases. The lease provides in part as follows:

"It is agreed that this lease will remain in force for a period of ten years from this date and as long thereafter as oil, gas, casinghead gas, casinghead gasoline or any of them is produced from said leased premises, or drilling operations are continued as hereinafter provided. If, at the expiration of the primary term of this lease, oil or gas is not being produced on the leased premises but lessee is then engaged in drilling operations, then this lease shall continue in force so long as drilling operations are being continuously prosecuted on the leased premises; and drilling operations shall be considered to be continuously prosecuted if not more than sixty days shall elapse between the completion or abandonment of one well and the beginning of operation for the drilling of a subsequent well. If oil or gas shall be discovered and produced from any such well or wells drilled or being drilled at or after the expiration of the primary term of this lease, this lease shall continue in force so long as oil or gas shall be produced from the leased premises.

\* \* \* \* \* \*

"All express or implied covenants of this lease shall be subject to all Federal and State Laws, Executive Orders, Rules or Regulations, and this lease shall not be terminated, in whole or in part, nor lessee held liable in damages, for failure to comply therewith, if compliance is prevented by, or if such failure is the result of, any such Law, Order, Rule or Regulation."

On May 9, 1961, an order of the Corporation Commission of the State of Oklahoma established 640 acre drilling and spacing units in the area for the development and production of gas and gas condensate from the Oswego Sand common source of supply. Section 8 was designated as a unit and the permitted well was required to be within 1250 feet of the center of the unit. The order also provided:

"5. That all royalty interests within any spacing unit shall be communitized and each royalty owner within any unit shall participate in the royalty from the well drilled thereon in the relation that the acreage owned by him bears to the total acreage in the unit.

"6. That in the event there was divided or undivided interests within any unit and the parties are unable to agree on a plan for the development of the unit, then their rights and equities shall be adjudicated by the Commission as provided for by sub-section d, Section 87.1, Title 52, 1951 OSA."

It was also stipulated that on June 29, 1962, the defendant, with approval of the Corporation Commission, and "for itself, and on behalf of the other lessees in the section, commenced the drilling of a well * * * projected to the Oswego Sand, and thereafter diligently drilled the same to the Oswego Sand common source of supply." The well was located in the NW¼ of Section 8, and not upon either of the properties of plaintiffs under lease to defendant. The stipulation further provided:

"* * * That the well so drilled was the permitted Oswego Sand well for the unit consisting of said Section 8, and was completed on the 7th day of August, 1962, as a well capable of producing gas and gas condensate in commercial quantities from said common source of supply."

It is admitted that all annual delay rentals had been satisfactorily paid.

Plaintiffs contend that the oil and gas leases expired under their own terms on July 2, 1962, and the spacing order of the Corporation Commission did not serve to extend the term of the leases. The basic complaint of plaintiffs is that no well was drilled on the leased properties in accordance with the lease provisions.

The question to be answered is whether under the circumstances the drilling and completion of the well within the drilling and spacing unit, but not upon the land described in the leases, was effective to continue the leases in force and effect.

■ The order of the Corporation Commission creating the drilling and spacing unit was made pursuant to 52 O.S.1961, Sec. 87.1, to prevent the waste of oil or gas which was prohibited by such statute. Under the order and the statute (Sec. 87.1, subd. (d)) only one permitted well was allowed in the unit and additional wells upon the subject leased lands would have violated the order. In Anderson v. Corporation Commission, Okl., 327 P.2d 699, this court held as follows:

"A statute authorizing the Corporation Commission to regulate production

of oil and gas so as to prevent waste and to secure equitable apportionment among owners of the leasehold interest of the oil and gas underlying their land, and to fairly distribute among them, the costs of production and of the apportionment is a proper exercise of the police power and does not violate the provisions of the State or Federal Constitutions."

See also Layton v. Pan American Petroleum Corporation, Okl., 383 P.2d 624, and cases cited therein on this matter.

■ Based upon this rule of law we conclude that plaintiffs and defendant were bound by the drilling and spacing order and that there was no impairment of the lease contracts within the meaning of the prohibition in the State and Federal Constitutions.

■ In Layton v. Pan American Petroleum Corporation, supra, we relied upon State of Oklahoma ex rel. Commissioners of the Land Office v. Carter Oil Company of West Virginia, Okl., 336 P.2d 1086, and Whitaker v. Texaco, Inc., 10 Cir., 283 F.2d 169, and held:

"By virtue of 52 O.S.1961, Sec. 87.1, subsection d, the 'thereafter' clause and the legal effect of the pooling order of the Corporation Commission of Oklahoma combine to result in an extension of the primary term fixed in an oil and gas lease if the well on any portion of the pooled acreage satisfies the requirements of the clause."

In the Layton case and the Carter Oil Company case, supra, the permitted well was drilled to completion in the productive sand prior to the expiration of the primary term of the leases. This satisfied the "thereafter" clause in the leases and the decisions held that this resulted in an extension of the primary term fixed in the leases.

■ Plaintiffs point out that in the present appeals the well was not completed

prior to expiration of the primary term and state this distinguishes the present cases from our above cited decisions. This is a difference in facts, but the above rule of law is still applicable in determining whether the leases have been extended. The present leases have a "commence" provision in their "thereafter" portion, supra, whereby the leases are continued by drilling commenced before expiration of the primary term and continuously prosecuted to a time after the fixed term. It was stipulated that such drilling was performed by defendant before and after expiration of the fixed term. This satisfied the "thereafter" clause of the leases. In Whitaker v. Texaco, Inc., supra, it was stated:

"* * * the spacing order did not extend the primary term but 'set the stage for the extension of the term by an activity which met the requirements of the "thereafter" clause and which occurred somewhere within the spacing unit.' "

We fail to see that the difference between a "completion" situation and a "commence" situation has any effect on the problem. In McClain v. Harper, 206 Okl. 437, 244 P.2d 301, lessees of adjoining lands, under express authority in the leases, pooled or communitized the lands for development and operation in the production of oil and gas. Plaintiff lessor's lease, which was the subject of the quiet title action, had a "commence" provision and a short time before the expiration of its primary term a well was commenced on other leased adjoining land, and was prosecuted after the primary term to production. Therein we stated:

"* * * The defendants, having commenced a well upon any tract of land, pooled or unitized with that of the plaintiffs, within the primary term of the lease on plaintiffs land, are entitled to the same protection from expiration of the lease contract as though the well were located upon the lands specifically described in plaintiffs' lease. * * *"

Plaintiffs contend, however, that the subject leases do not have clauses authorizing pooling with other leases, and that no order of the Corporation Commission was made pooling the leases in section 8. Under the present circumstances we fail to see that there is any reason to depart from the rule stated in McClain v. Harper, supra, when the lease is made subject to all State Laws and Executive Orders.

The purpose of 52 O.S.1961, § 87.1, was conservation of the oil and gas with particular attention directed to protection of private lease contracts and the correlative rights of all parties in interest. To effect this purpose the order of the Corporation Commission communitized all royalty interests. Under 52 O.S.1961, § 87.1, subsection (d), the "owners" (defined in Sec. 86.1(d) as meaning persons having the right to drill into and produce from any common source) of divided or undivided interests may validly pool their interests and develop their lands as a unit, or the Commission on application shall require them to do so. The stipulation states the defendant drilled the permitted well for itself and on behalf of the other lessees. It appears therefore that the lessees voluntarily pooled their interests.

The concern of the plaintiff royalty owners is that their interests be protected, and the statute does protect them. The concern of the defendant lessee is development by pooling its interest with that of other lessees within the spacing unit, and the statute has accomplished this result. We fail to see that plaintiff have grounds for complaint in this respect.

It is our conclusion that under the facts set out in the stipulation, the leases of the defendant were extended. The judgment of the trial court refusing to cancel the leases was correct.

Affirmed.

HALLEY, C. J., JACKSON, V. C. J., and JOHNSON, BLACKBIRD, IRWIN and BERRY, JJ., concur.