Margery B. RICKETTS et al., Plaintiffs in Error,

v.

Lester O. WELCH et al., Defendants in Error.

No. 43159.

Supreme Court of Oklahoma.

July 13, 1971.

Rehearing Denied Sept. 14, 1971.

Duffy, Johnson & Berry, by J. Paul Johnson, Ponca City, for plaintiffs in error.

**362**

Ross, Ross & McCarty, Newkirk, Kerr, Davis, Irvine & Burbage, by Charles A. Purser, Oklahoma City, for defendants in error.

BLACKBIRD, Justice.

This appeal involves the question of who owns the mineral owners' ⅛th part of the sale proceeds of certain oil and gas produced on an 80-acre tract of land, many years after the parties' predecessor in title, James S. Hubbard (who died in 1925), executed and delivered an oil and gas lease in 1921 covering the quarter section of land, of which the tract, here involved, comprises the southern half (described as the S½ of NW¼ of Sec. 12, Twp. 26 N., R. 2 W., in Kay County). This 160-acre lease, as well as the leasehold created under it, will be referred to interchangeably as the "Alcorn lease".

The question at issue hinges on the effect of an approximate seven-year cessation of production from wells located on this south half of the quarter section, upon the further extension of the terms of a certain 20-year and another 30-year royalty grant, which Hubbard conveyed, at different times, to different grantees, covering different undivided interests in and under this 80 acres, shortly before the first well, known as the "Hubbard No. 1", was drilled on it. The trial court held that this cessation of production could not be said to be other than temporary, and (in substance) had not ended the terms of these royalty grants. We disagree, and reverse his judgment.

After Continental Oil Company (hereinafter referred to merely as "Continental"), successor owner of the Alcorn lease, had obtained production from five other wells drilled at various locations on both the north and south halves of this 160-acre lease, and designated, respectively, as the "Hubbard No. 2" to "Hubbard No. 6", both inclusive, production on the south 80 acres of it ceased when the Hubbard No. 6 well quit producing in 1953.

Thereafter, in March, 1954, this State's Corporation Commission filed a "CER-

TIFICATE. OF NON–DEVELOPMENT" as to this S½ of the NW¼ of the Section (12), in accord with Tit. 17, O.S.1951 and 1961, § 167; and this certified cessation of production from this particular 80 acres of the Alcorn lease continued until Continental caused the Hubbard No. 5 well to start producing again on January 4, 1960, by drilling out its plugs and deepening it to the lower Simpson sand.

This well has been producing from this lower horizon since that date, but, as this was the first production on the lease's southern 80 acres during the above mentioned seven years, Continental refused, in accord with the opinion of one of its title attorneys, to pay the sale proceeds of the mineral owners' ⅛th of this production to Lester O. Welch and other successors in interest of the grantees of Hubbard's aforementioned term royalty conveyances (executed and delivered to one Carlos Combs and to Northern Royalty Trust, respectively, on different days in July, 1923).

Finally, almost six years later (February, 1966) and after withheld proceeds of this royalty production had accumulated in an amount of several thousand dollars, Welch and other defendants in error herein, who deraign their title through the two above mentioned term royalty conveyances (hereinafter referred to as "plaintiffs"), brought this action, for themselves and all other parties similarly situated, against Continental and another, for a judgment, which (stated in brief substance) would determine whether or not their term royalty interests in the S½ of the NW¼ of Section 12 still subsisted, and they were accordingly entitled to their pro rata part of the proceeds of the Hubbard No. 5's new and deeper production, or whether their term royalty had ceased to exist by reason of the above mentioned seven-year cessation of production on that 80 acres and they were not entitled to any part of those proceeds. A judgment that these term royalty grants were no longer in being, in January, 1960, when the new production from the Hubbard No. 5 began, would have left title to

the reversionary mineral estate (remaining upon said term royalty's termination) then intact in plaintiffs in error, who appeared as "defendants" below, and claimed interests in it as successors in title to the late James S. Hubbard, the aforementioned grantor named in the two hereinbefore mentioned base conveyances of the term royalty. Our continued reference to those defendants will be by their said trial court designations.

In rendering judgment for plaintiffs and the intervenor, Sohio Petroleum Company (hereinafter referred to merely as "Sohio"), who also deraigns its title to a term royalty interest through one of the two above mentioned term royalty conveyances, the trial court appears to have been significantly influenced by this Court's opinion in Beatty v. Baxter, 208 Okl. 686, 258 P.2d 626, and by that case's District Court judgment, which plaintiffs introduced in evidence to support their plea that defendants were estopped by said judgment, and this Court's opinion affirming it, from contending that plaintiffs' term royalty had expired.

The trial court appears to have adopted this theory in entering judgment in favor of plaintiffs and Sohio and against Hubbard's successors in interest, as defendants, and to have been of the view that as long as Continental's (Alcorn) lease, covering the entire quarter section, subsisted, plaintiffs' and Sohio's term royalty in the south half of said quarter section also subsisted.

In findings of fact included in its judgment, the court specifically recognized the approximate seven-year cessation (beginning in 1953 and ending in 1960) of production from the lease's south half, but, in finding that "it cannot be said that the evidence indicates that there has ever been anything other than a temporary cessation of production", the court referred to the history of *the whole quarter section's* production; and it concluded that the life of plaintiffs' and Sohio's term royalty is coextensive with the life of *the lease on said quarter section.*

Defendants' arguments for reversal are set forth under two propositions, under each of which they pose a different question. As to the second of these questions, their position is that the production from the wells drilled on the north half of the Hubbard quarter section did not serve to extend the subject term royalty interests in the south half of said quarter section involved here.

As to the first of these questions, defendants contend, in general substance, that the evidence was insufficient to support the trial court's judgment (in effect) that the seven-year cessation of production (hereinbefore described) was a temporary one. As to the matter of whether this cessation was temporary, or permanent, they infer that said court was incorrectly influenced by this Court's opinion in Beatty v. Baxter, supra, wherein the cessation of production involved was for a much shorter period of time and under circumstances showing no intention of abandoning development of the north half of the Alcorn lease, which circumstances did not exist in this case involving the south half of said lease. We agree. In addition to plaintiffs' reference to what we said in Beatty, supra (258 P.2d p. 629), about the rights and duties of grantees of royalty interests being "materially different", from those of lessees (in effecting production from the land to which their interests pertain), they also quote an excerpt from Panhandle Eastern Pipe Line Company v. Isaacson (USCA, 10th Cir.), 255 F.2d 669 (to which case we referred in Dooley v. Cordes, Okl., 434 P.2d 289, 290) to support their argument inferring that, since stoppages of production are "beyond the control" of royalty owners (unlike lessees), no such events can be used against such owners, as evidencing an intent to abandon, or to indicate permanency, in such a stoppage.

As we construe Isaacson, supra, the most significant fact or circumstance in that case was the drilling and spacing unit order entered by this State's Corporation Commission, and the effect which the court there found it had on the matter of extending the term of the royalty interests there involved, when wells were thereafter drilled

into a common source of supply. That factor is not present in this case, and, in its absence, this Court's previous rejection of the common law theory of apportionment of rents still governs in this jurisdiction. In this connection, see Galt v. Metscher, 103 Okl. 271, 229 P. 522; Pierce Oil Corporation v. Schacht, 75 Okl. 101, 181 P. 731; Kimbley v. Luckey, 72 Okl. 217, 179 P. 928, and the discussions in the references under footnote 47, p. 284, of Kulp, Cases on Oil and Gas, 3rd Edition. Notice also Stroud v. D–X Sunray Oil Co., Okl., 376 P.2d 1015, 1018. We find no provision in either the Alcorn lease, or the base royalty conveyances, in the present case that is the equivalent of the "entirety" provisions of the lease involved in Gypsy Oil Co. v. Schonwald, 107 Okl. 253, 231 P. 864, or any Oklahoma case of similar import. Therefore, plaintiffs may not invoke a decision in this case similar to the one there.

But Sohio's brief advances (for plaintiffs as well as for itself) the argument that defendants were estopped by Beatty v. Baxter, supra, from contending that the subject term royalty had terminated by reason of the seven-year cessation of production on the south half of the Alcorn lease. Sohio recognizes, in this brief, that this Court's opinion in Beatty, supra, did not affirm the trial court's judgment in that case on this ground, but it seizes upon a rather incidental finding, contained in said judgment, to the effect that the term royalty interest of the defendants, there, "shall continue * * * for so long as said lease continues in force and effect * * *", and Sohio asserts this is res judicata of the question defendants submit under their PROPOSITION II. In this connection, Sohio says (without contradiction) that there is no material difference in the wording of the royalty grants under which the defendants in Beatty, supra, held, and the wording of the grants under which plaintiffs and Sohio in this case claim that their term royalty continued as long as the Alcorn lease was extended by production *on any part* of it. Accordingly, it is contended that, as indicated by the trial court's findings and conclusions, the question of whether plaintiffs' and Sohio's term royalty is still in being, could not be retried in this case.

■ There is no merit to Sohio's argument that the above described finding of the trial court in Beatty, supra, constituted an estoppel against defendants' claim that (contrary to the expressed view of the trial court in this case) the life of plaintiffs' and Sohio's term royalty was not coextensive with the life of the Alcorn lease. As is obvious from a reading of this Court's opinion affirming that court's judgment, the finding in question was not necessary to that judgment. The doctrine of estoppel by judgment therefore does not apply. See Lewis v. Aubrey, Okl., 404 P.2d 1005 (1st syl.), and other cases digested in 9 Okl. Dig., "Judgment", under ■■■■■ and 46 Am.Jur.2d, "Judgments", § 416.

■ In accord with the foregoing, we hold that the exploration done, and production effected, on the north half of the Alcorn lease (N½ of NW¼ of Section 12–26–2) during the seven-year period when there was no production on the south half of that lease (S½ of NW¼ of Sec. 12, supra), did not serve, under the evidence in this case, to extend the period of plaintiffs' term royalty grants so as to include the new production beginning on the south half in the Hubbard No. 5 in January, 1960, and the trial court erred in finding (in substance) that on the basis of that development, and the other evidence in this case, the seven-year cessation of production on the south half of said lease could not be said to be anything other than temporary. We further hold that the other findings and conclusions upon which said court apparently based his judgment (as indicated herein) were also erroneous.

The judgment of the trial court is therefore reversed, and this cause is remanded to that court with directions to set it aside and to render judgment for the defendants, and to determine any ancillary issues necessary to quieting their title to interests in the reversionary mineral estate of the S½ of NW¼ of said Section 12, remaining

upon termination of the term royalty interests herein adjudicated, and to securing for them their pro rata share of the oil-run sale proceeds held by Continental.

BERRY, C. J., DAVISON, V. C. J., and WILLIAMS, JACKSON, HODGES, LAVENDER and McINERNEY, JJ., concur.

IRWIN, J., concurs in result.