James W. FOX and Judy Ann Fox, husband and wife, Appellants,

v.

W.B. FELTZ, Trustee; S.C. Combs; A.G. Cross; A.G. Cross, Jr.; Russell Cross; Loyce Greenwood Monselle; Gordia Belle Feltz; Patricia Ann Johnston; James Donald Lovett, if living, or if any of them are deceased, their respective unknown successors; E.S. Hester; and George Bingaman, Appellees.

No. 61018.

Court of Appeals of Oklahoma, Division No. 2.

Dec. 11, 1984.

Rehearing Denied Jan. 14, 1985.

Certiorari Denied March 19, 1985.

Released for Publication by Order of the Court of Appeals March 22, 1985.

---

Charles W. Park, Park, Nelson, Caywood & Park, Chickasha, for appellants.

George Bingaman, Purcell, pro se.

E.S. Hester, Purcell, pro se.

MEANS, Presiding Judge.

Plaintiffs, as owners of the surface interest and an undivided one-half mineral interest, brought this action to cancel an instrument styled "Royalty Deed" for nonproduction of oil and gas. Defendants, owners of one-fourth of what they refer to as the royalty interest, asserted that production from a well in a drilling and spacing unit was sufficient to meet the terms of the instrument. Both parties moved for summary judgment, and defendants' motion was granted. Having reviewed the record and applicable law, we affirm.

The facts are not in dispute. This case concerns the interpretation and effect to be given to what was denominated a nonparticipating royalty deed which covers 190 acres of land in three separate sections of McClain County. The property is located in sections 22, 27, and 36; however, most of the land—140 acres—is in section 36. That part in the northwest quarter of section 36 is involved in this dispute.

Both the surface and mineral interests of the entire land which is the subject of this dispute were previously owned by Paul and Lavern Aldridge. Plaintiffs are the successors in interest to the Aldridges and own the entire surface and an undivided one-half mineral interest.

On August 27, 1957, the Aldridges conveyed, by the instrument denominated a nonparticipating royalty deed, an undivided one-half interest in the following lands, known as the Aldridge Tract:

S½ of the NW¼ of the SW¼ and the W½ of the SW¼ of the SW¼ of Sec. 22, Township 8 North, Range 4 West I.M.; The SE¼ of the NE¼ of Sec. 27, Township 8 North, Range 4 West I.M.; The E½ of the NE¼ of the NW¼ and the SW¼ of the NE¼ of the NW¼ and the N½ of the NE¼ of the SW¼ and the NW¼ of the NE¼ of the NW¼ and the W½ of the NW¼ of Sec. 36, Township 8 North, Range 4 West I.M.

By its terms, the deed was to run for twenty-five years or as long as oil and gas was produced in paying quantities "from said land or any portion thereof." The grantees of the Aldridge Tract were all the above named defendants, including Feltz, as trustee, with the exception of Bingaman and Hester.

On August 10, 1959, defendant Feltz, as trustee of the A.G. Cross Trust, conveyed to A.G. Cross by nonparticipating royalty deed, an undivided one-fourth mineral interest in the Aldridge Tract. Cross then conveyed this mineral interest to defendant Hester on August 15, 1959. In October 1961, Hester conveyed half of his one-fourth interest, an undivided one-eighth mineral interest, to defendant Bingaman. Defendants Hester and Bingaman thus acquired an undivided one-fourth mineral in-

terest. The other undivided one-fourth mineral interest in the Aldridge Tract is held by certain heirs and devisees who did not appear at trial and had a default judgment taken against them. The description of the land in each of these deeds is the same as the description found in the original Aldridge deed.

At some time after the royalty deed conveyance, part of the Aldridge Tract located in the southwest quarter of section 36, was included in a drilling and spacing unit established by the Oklahoma Corporation Commission. Production was obtained on part of the land in the unit during the twenty-five year term. This production, which is from the Minski well, continues to the present time. The following diagram represents the land in the Aldridge Tract which is found in section 36. It also includes the location of the Minski well. The Minski well is not included in the Aldridge Tract.

**SECTION 36**

As shown in the diagram, the Minski well is located in a spacing unit that includes the entire southwest quarter of section 36. Plaintiffs concede that the Minski production is sufficient to hold the portion of the Aldridge Tract in that particular unitized quarter. However, they contend that production from the Minski is insufficient to maintain the Aldridge Tract beyond its primary term as to those lands located outside the drilling and spacing unit.

Plaintiffs brought this action to cancel the instrument as to those other lands where no production has taken place. Plaintiffs contended that the conveyance covered eight separate tracts and that in order for the instrument to continue past its primary term, production would have to occur in each tract. Plaintiffs asserted that the instrument should be cancelled as to those areas of the Aldridge Tract located in the northwest quarter of section 36 and in sections 22 and 27.

Plaintiffs and defendants both moved for summary judgment. Defendants agreed that there were no issues concerning any material facts. The basic question concerned whether production from the Minski well had kept the conveyance in effect. The trial court granted judgment for the defendants, finding that although there were currently no producing wells on some of the land in the Aldridge Tract, the production from the Minski well was sufficient to maintain and extend the term of the instrument as long as oil and gas were produced. On appeal to this court plaintiffs assert that the instrument had expired by its own terms as to those tracts in sections 22, 27, and 36 which were nonproducing.

It must first be noted that plaintiffs' position rests almost entirely on *Halliburton v. United Petroleum Exploration, Inc.,* 53 O.B.J. 1679 (Okla.Ct.App.1982). *Halliburton* was decided by the Oklahoma Court of Appeals, Division 2, on July 6, 1982. However, the appeal was dismissed on October 8, 1982, after the parties had settled on July 1, 1982. The opinion was withdrawn from publication by order of the Court of Appeals on December 27, 1982.

Plaintiffs agree that the terms of the conveyance provide that it shall continue as long as oil or gas is "being produced from said land or any portion thereof." However, they assert that it would be "lu-

dicrous" to believe that the grantor intended production from any part of the area conveyed to extend the instrument for the entire Aldridge Tract. They offer no legal authority for this, but merely speculate as to the intent of the grantor. They place great emphasis on the fact that the description of the property is made by using three calls for one forty-acre tract. As defendants point out, the property is described in the same sentence and separated by semicolons. The description is part of the same paragraph and found in one instrument. No special significance can be accorded to the fact that the person describing the land chose to punctuate the description in any particular fashion.

As further support for their arguments, plaintiffs contend that the producing well is not on the specific lands in the Aldridge Tract, but on other lands in a drilling and spacing unit established by the Corporation Commission. Plaintiffs' argument is neither supported by the statutes nor the cases in Oklahoma. Title 52 O.S.1981 § 87.1(e), provides in part: "The portion of the production allocated to the owner of each tract or interests included in a well spacing unit formed by a pooling order shall, when produced, be considered as if produced by such owner from the separately owned tract or interest by a well drilled thereon."

The instrument in the instant case does not require a well on the land, but only production. In *Rein v. Humble Oil & Refining Co.*, 400 P.2d 800 (Okla.1965), the terms of the leases provided that the lease "will remain in force for a period of ten years from this date and as long thereafter as oil, gas, casinghead gas, casinghead gasoline or any of them is produced from said leased premises, or drilling operations are continued as hereinafter provided." *Id.* at 802. During the primary term, the Corporation Commission established a drilling and spacing unit. Pursuant to this order the lessee located a well on property within the unit, but not on the lease. The court held that the "thereafter" clause of the lease, together with the pooling order, combined "to result in an extension of the primary term fixed in an oil and gas lease if the well on any portion of the pooled acreage satisfies the requirements of the clause." *Id.* at 803.

In *Turner v. McBroom*, 565 P.2d 44 (Okla.1977), the court was faced with a factual situation nearly identical to the one here. In *Turner* the deed reserved an interest in eight separate tracts. The reservation was to expire in fifteen years unless "oil, gas or other minerals are produced therefrom in paying or commercial quantities." *Id.* at 45. Both parties agreed that there was no production on seven of the tracts included in the reservation. The defendants maintained that the requirement of the "thereafter" clause was met as to the entire tract if it was met for one tract. They pointed to the single consideration given for the interest and other language in the instrument which referred to the property in singular terms. The court looked at the deed as a whole and determined that the intent of the parties was to treat the tract as one unit. Thus, production in any one of the tracts, maintained the reservation as to the entire area.

Plaintiffs cite *Ricketts v. Welch*, 488 P.2d 361 (Okla.1971), for the proposition that production on only one tract of land does not affect the lease as to other areas. *Ricketts* is clearly distinguishable from the facts here. In *Ricketts*, the grant was to a specific eighty-acre tract. The conveyance occurred in 1923 and was subject to an oil and gas lease executed in 1921 which covered the eighty acres and other land as well. Production ceased on the eighty acres for seven years. In a quiet title action concerning the royalty on the nonproducing eighty-acre tract, the grantees argued that because the lessee had drilled wells on other lands included in the lease the royalty interests continued. They asserted that the terms of their grant had been extended even though none of the drilling had oc-

curred in the specific eighty-acre tract. The court pointed out that there was no spacing or unitization order and that termination of production on the eighty acres in the grant had no relation to the terms of the lease which the lessee had entered.

 The terms of the instrument in question are clear and unambiguous. There is no dispute that production is occurring on a portion of the unit. The case law and statutes make it clear that the terms of the grant continue as long as production continues. The trial court's decision is in all respects affirmed.

REIF, J., concurs.

BACON, J., concurs in result.