**D. E. WHELAN et al., Appellants,**

**v.**

**PLACID OIL COMPANY et al., Appellees.**

**No. 6763.**

Court of Civil Appeals of Texas.

Texarkana.

Nov. 11, 1954.

Rehearing Denied Dec. 30, 1954.

John E. Taylor, Marshall, Morton Taylor, Sinton, for appellants.

Shank, Dedman, & Payne, Dallas, B. B. Barber, Shreveport, La., Walter Clemons, Houston, J. K. Smith, Fort Worth, Smith & Hall, Marshall, for appellees.

WILLIAMS, Justice.

W. N. Peal, a widower, and his four children, the owners of the fee simple title to the 146-acre tract out of the Betty Humphries Survey in Harrison County, Texas, involved in this litigation, on August 18, 1937, executed and delivered to W. W. Blocker as lessee a valid mineral lease covering the tract, styled herein the Peal-Blocker lease. The lease was for a primary term of 10 years from July 29, 1937, and "as long thereafter as oil, gas or other minerals are produced from said land." Blocker assigned the lease to Gulf Oil Corporation in October 1937. The latter assigned in September 1945 an undivided one-half interest in the gas and oil rights in the lease to Placid Oil Company. The annual delay rentals provided for therein were properly paid each year so as to maintain the lease in its entirety in full force and effect during its primary term (the 10-year period).

W. N. Peal, who owned an undivided one-half interest in fee at the time of the execution of above lease, died September 12, 1937. His four children, who will herein be called the Peals, inherited their father's interest and thus became the owners of the full ⅝ mineral estate subject to above Peal-Blocker lease. On August 12, 1945,

the four Peals conveyed to one Harry Crawford an undivided one-half interest in the oil, gas and other minerals in and under six tracts of land which included the 146-acre tract. A clause in the mineral deed to Crawford reads: "Said land being now under an oil and gas lease executed in favor of any valid lease, it is understood and agreed that this sale is made subject to the terms of said lease and/or any other valid lease covering the same, but covers and includes one-half of all of the oil royalty and gas rental or royalty due to be paid under the terms of said lease, in so far as it covers the above described land."

Thereafter, on March 4, 1947, and within the primary term of the Peal-Blocker lease, the Peals, the owners of the then remaining one-half of the mineral fee, also subject to the Peal-Blocker lease, executed and delivered to Placid Oil Company a "pooling amendment to oil, gas and mineral lease," and on March 12, 1947, they executed a "unit declaration" tendered to them by the same company. The terms of the "pooling amendment" and the "unit declaration" will be later herein detailed. The proof is undisputed that Harry Crawford owned an undivided one-half interest in the minerals under the tract subject to the Peal-Blocker lease on above dates when the "pooling amendment" and the "unit declaration" were executed by the Peals. It is further undisputed that Crawford refused to and did not execute either.

On February 12, 1949, Crawford and the Peals executed and delivered an oil and gas and mineral lease to R. J. Whelan which describes the 146-acre tract. This lease was for a primary term of ten years and provided for the payment of delayed rentals. On the basis of the asserted rights granted under this lease, R. J. Whelan joined by D. E. Whelan entered upon the 146-acre tract and drilled a producing gas well which will herein be called "Peal A well." This well was completed in December 1949, and at all times since has been producing gas and other liquid hydrocarbons.

No provision in the Peal-Blocker lease authorized the pooling or unitization of the leasehold estate or the royalty estate of the lessors, but the pooling agreement or amendment of March 1947 executed by the Peals to Placid Oil Company authorized the lessee to form drilling or production units and in the case of gas, distillate or condensate the units were not to exceed 704 acres in size. This amendment further provided, "The commencement, drilling, completion of or production from a well on any portion of the unit created hereunder shall have the same effect upon the terms of said lease as if a well were commenced, drilled, completed or producing on the land embraced by said lease."

The Blocker lease is expressly referred to in above amendment and it is recited therein that the parties "desire to supplement and amend said lease." Its final paragraph reads: "It is agreed that the hereinabove described lease shall remain unchanged by this instrument except as provided herein, and we, the undersigned, hereby lease, demise and let unto Lessee, its successors and assigns, the land described in said lease subject to and in accordance with all of the terms and provisions thereof, as hereby supplemented and amended and we hereby adopt, ratify and confirm said lease as supplemented and amended hereby and acknowledge the same to be a valid and subsisting oil, gas and mineral lease on the land described therein." The Peal-Blocker lease covering the 146-acre tract was included in a unit designated as Placid Oil Company-Dee Knox unit No. 1, which unit area specified 696.82 acres of land. It provided "that the commencement, drilling, completion of or production from a well on any portion of said unit shall have the same effect upon the terms of each lease covering the lands in the unit as if a well were commenced, drilled, completed or producing on the land embraced by each lease in the unit * * *." A consideration for this agreement was the agreement that Placid Oil Company would commence drilling operations in the search of oil or gas at a loca-

tion on the unit within 45 days from March 12, 1947 (the date of the unitization agreement).

Placid Oil Company drilled a well within the unit area and completed a gas well in June 1947, within the terms and time of above agreement and within the primary term of the Peal-Blocker lease. This well has been producing in paying quantities since its completion. This well is not located within the boundaries of the 146-acre tract, but is within the above unitized 696.82-acre block. The Peals together with others executed an agreement on February 16, 1948, which authorized Placid to extract gasoline or other liquid products from the gas produced from the unit under the specifications therein detailed. This written agreement forthwith filed for record in Harrison County deed records is known in the oil circles as a processing agreement. This agreement refers to the Dee Knox unitization agreement as to its date and deed recordation of volume and page. It appears that Placid, as the operator, drilled this well pursuant to a joint venture agreement it had with Gulf Oil Corporation and Stanolind Gas Company, the terms of which agreement is not disclosed in the record.

Placid Oil Company, Gulf Corporation and Stanolind Oil & Gas Company, the plaintiffs below, in a trial to the court in this trespass to try title action and for an accounting against R. J. and D. E. Whelan, and the Peals, were awarded judgment for title and possession of a one-half undivided interest in and to the mineral leasehold estate on the 146-acre tract. They also recovered a money judgment against the Whelans, being the ascertained amount of one-half of the minerals produced, less one-half of the development and operating costs. Many owners and asserted owners of mineral rights under the two asserted leasehold estates were parties to the suit but do not appeal. The court also decreed that the Dee Knox unitization agreement, hereinabove mentioned as a "unit declaration," was valid. The judgment details the interest of the royalty owners as well as the respective amount due each under the Dee Knox unitization agreement, which included the Peals; same to be paid out of the total money awarded. The Whelans and Peals are appellants. The three oil companies above named, unless otherwise specifically stated, will be styled appellees.

Based upon the undisputed fact that Crawford refused to and did not join in either the unitization or pooling agreements, appellants under variously worded points assert that the Peal-Blocker lease expired on July 28, 1947, its terminal expiration date. They contend that the Peals, the co-tenants of Crawford, could not pool, unitize or combine their undivided interest in the minerals with other lands and mineral interests without the joinder and consent of all parties owning undivided mineral interests in the 146-acre tract.

■ As a general rule, a tenant in common has the right to execute a lease on his undivided interest in the common property, notwithstanding the nonjoinder of his co-tenant. Davis v. Atlantic Oil Producing Co., 5 Cir., 87 F.2d 75, and the decisions cited on page 77; 86 C.J.S., Tenancy in Common, § 114; Powell v. Johnson, Tex. Civ.App., 170 S.W.2d 273.

■■ We are cited to no decision and in our search we find none (under above general rule) that denies to a co-tenant the legal right to incorporate a pooling agreement into an initial or original oil and gas lease without the consent or joinder of the other co-tenant or co-tenants, so as to create a valid contract binding the undivided interest of such acting co-tenant. If this right exists in such co-tenant, and we so conclude, then it logically follows that the timely completion of a producing well under the terms of a pooling agreement, substantially as here, and within the unit area as set out in the unitization agreement will serve to continue the lease in full force and effect even after the terminal date, if, as here, oil or gas is being produced in commercial quantities. In the absence of any Texas decision that deals with the timely development of a producing well within a unitized area under a pooling

agreement executed by a co-tenant so as to bind the interest of such acting co-tenant, we have reached our conclusions based on the holdings in Scott v. Pure Oil Co., 5 Cir., 194 F.2d 393; Jackson v. Hunt Oil Co., 208 La. 156, 23 So.2d 31; Gray v. Cameron, 218 Ark. 142, 234 S.W.2d 769; McClain v. Harper, 206 Okl. 437, 244 P.2d 301; see also Art. 5382c, R.C.S. of Texas, Vernon's Ann.Civ.St.

■ The Peals in no wise sought to impeach their execution of the three mentioned agreements so far as same affects their one-half royalty interest in the completed and producing Placid well. Each a solemn contract, standing here as unimpeached, they are legally bound by such terms. They do not deny that they have accepted their pro rata share in the royalties since completion of the Placid well calculated under the terms of the unitization agreement. It does not clearly appear in the brief that the Peals seek to avoid the legal import of above agreements. If we be in error as to their position, then they are estopped to deny the validity of the unitization agreement, including the Blocker lease as to their one-half interest therein. Kuklies v. Reinert, Tex.Civ.App., 256 S.W.2d 435, and authorities there collated; Leopard v. Stanolind Oil & Gas Co., Tex.Civ.App., 220 S.W.2d 259.

The pooling agreement and the unitization agreement had both been recorded in the Harrison County deed records prior to the expiration date of the primary term of the Peal-Blocker lease and some two years prior to February 12, 1949, when Whelan took his lease from Crawford and the Peals. Above processing agreement executed by the Peals which recognized the Dee Knox unitization agreement had been of record for a year prior to the execution of the Whelan lease.

■ Each of these recorded instruments covered the Peals' mineral and royalty interest in the 146 acres that Whelan dealt with when he acquired a leasehold interest in 1949. This was in the latter's chain of title and such recordations visited upon him constructive notice of the contents of each. We therefore conclude that as the Peals were bound by their solemn contracts with respect to their undivided one-half interest, so should Whelan who acquired this leasehold interest from the Peals be bound. Arts. 6631 and 6646, R.C.S. of Texas; 36 Tex.Jur. (Record & Registration Acts) Sec. 61. The judgment does not disturb but recognizes as valid Crawford's title to his full one-half undivided royalty interest in the 146-acre tract under the Whelan lease and fully recognizes the validity of Whelans' leasehold interest so far as it affects such one-half interest of Crawford. Crawford who was a co-tenant at all pertinent times herein makes no complaint of the judgment. We therefore overrule the points which assert for various reasons that the Peal-Blocker lease expired on July 29, 1947.

The Railroad Commission of Texas issued an order, dated September 7, 1948, styled "Gas Well Allowable Supplement on the Placid Oil Company Dee Knox Well No. 1," that recited that "the undivided ½ interest owned by Harry Crawford should not have been included in the acreage allocation for this well" and changed allowables on the basis of 550.82 acres (696.82–146) for the unit from 175343 to 158705 M.C.F. Paragraph 5 of the Peal-Blocker lease provides in part " * * * if after discovery of oil or gas the production thereof should cease from any cause, the lease shall not terminate if lessees commence additional or reworking operations within 60 days thereafter. * * * "

■ Under their fourth point appellants contend that the Peal-Blocker lease had terminated at the time Whelan secured his lease and drilled thereon because "more than 60 days had elapsed (the period mentioned above) since any part of the Peal 146 acres had been recognized by above order of the Railroad Commission as being in above unit. The Placid was producing from the well on July 28, 1947, the expiration date of the primary term of the Peal-Blocker lease and has continuously pro-

duced since then. Placid has never drilled for oil, gas or other minerals either before or subsequent to September 7, 1948, the date the original allowable for the unit was reduced.

■ "It is thought to be fundamental that the rules and regulations of the Railroad Commission cannot have the result of effecting a change or transference of property rights." Mueller v. Sutherland, Tex.Civ.App., 179 S.W.2d 801, 808. This Railroad Commission is a conservation body and has no jurisdiction to determine matters of title, which this point raises. Magnolia Petroleum Co. v. Railroad Commission, 141 Tex. 96, 170 S.W.2d 189; Arkansas-Louisiana Gas Co. v. Southwest National Production Co., 221 La. 608, 60 So. 2d 9; F. A. Gillespie & Sons Co. v. Railroad Commission, Tex.Civ.App., 161 S.W. 2d 159; 31–A Tex.Jur. (Oil & Gas) Sec. 366. The parties to the Placid Oil Company-Dee Knox unit had the legal right to establish the original unit as containing 696.82 acres. The Railroad Commission had the legal right under the conservation rules and regulations that had been promulgated for this field to modify its former order by setting the acreage factor for the unit at 550.82 acres. In making such reduction we do not consider that the Commission was attempting to determine title or that such order had the legal effect as here urged by appellants. The point is respectfully overruled.

The special field rules applicable to this field promulgated by the Railroad Commission in October 1945 made provision for the establishment of proration units, defining "proration unit" under Rule 6 thereof, to wit: "* * * continuous and contiguous acreage in an amount not to exceed a maximum of seven hundred and four (704) acres and in which acreage all interests concerned are common to all of such acreage or in which all parties concerned have pooled or unitized all of their interests in and under such acreage in such

manner as that * * * all of such acreage may be considered as one leasehold the same as if leasehold rights with respect thereto had been acquired by virtue of the execution of one lease contract." In subsection A of above it further specifies that "for the purpose of establishing the allowable for a gas well in the Whelan field' * * * the standard proration unit shall be 640 continuous and contiguous acres * * * plus a 10% tolerance." Above proration rules have remained in effect.

■ Appellants assert that the pooling and unitization agreements executed by the Peals "subverts and avoids the authority of the Railroad Commission in the enforcement of above Rule 6 since the rule does not authorize the pooling or unitization of only an undivided one-half interest in oil, gas or other minerals with other lands. Appellants' brief contains an extensive and able argument in support of this and the preceding points. However, we cannot escape the conclusion, and we so hold, that above rule relates to the acreage factor, a basis or the basis whereby the allowables for a unit are to be determined by the Railroad Commission. As we interpret the rules for production in this field, the Railroad Commission set up "640 acres continuous and contiguous acres * * * plus a 10% tolerance" upon which to calculate under its intricate and other technical rules for the field as a whole the allowable for each recognized unit calculated on an acreage basis as the unit bears to the total acreage of the field. The authorities cited in support of our disposition of the preceding point are likewise applicable here. The rules here asserted do not relate to the legal right of the Peals, a co-tenant, to enter into the agreements hereinabove set out so as to legally bind their interests under the terms of such agreements.

The remaining two points have been considered and are respectfully overruled.

The judgment is affirmed.