**Billy Gene HEATH and Lola Ruth Heath, husband and wife, Plaintiffs,**

v.

**B. K. FELLOWS, Defendant.**

**No. CIV–79–670–D.**

United States District Court, W. D. Oklahoma.

May 21, 1981.

Jonathan C. Ihrig, Blackwell, Okl., for plaintiffs.

E. Edd Pritchett and Joe Strealy, Oklahoma City, Okl., for defendant.

## MEMORANDUM OPINION

DAUGHERTY, Chief Judge.

This is an action originally filed in the District Court of Kay County, Oklahoma, wherein Plaintiffs seek various relief including cancellation of an oil and gas lease, to quiet title to the subject premises, declaratory relief, $3,000.00 actual damages for lost rentals and bonuses and $50,000.00 exemplary damages for alleged malicious acts of Defendant B. K. Fellows. Defendant later removed this action to this Court where subject matter jurisdiction exists pursuant to 28 U.S.C. § 1332 by reason of diversity of citizenship and the amount in controversy. This matter is presently before the Court for decision on stipulated facts. The parties have also filed extensive briefs in support of their respective positions and the Court conducted oral arguments in this case on March 24, 1981.

The facts of this case as stipulated to are as follows:

On January 18, 1974, the Plaintiffs executed an oil and gas lease with Defendant's predecessor in interest for a primary term of three years or as long thereafter as oil or gas is produced from the subject land. Said lease provided that the lessee may unitize the leased premises with any other lands for production and that production on the unit was to be treated as production on the leased premises.[1] Unitization could be ac-

---

1. The unitization clause involved herein does      not expressly require that Plaintiffs' interest be

complished by filing a written unit designation in the county in which the leased premises are located. Said lease covered an undivided ¾ mineral interest in the SW/4 of Sec. 17, Township 28N, Range 3E, Kay County, Oklahoma (Sec. 17). The remaining ¼ mineral interest in the SW/4 of Sec. 17 was also leased to Defendant's predecessor in title which contained a similar unitization clause. The NW/4 of Sec. 17 was leased to J. L. Sparlin (Sparlin) by separate leases. Two wells were drilled and have been producing on the NW/4 since 1958. The leases on the NW/4 are each from the owners of undivided interest in the NW/4 of Sec. 17. One of the leases was executed by the owners of an undivided ½ mineral interest in the NW/4 and does not contain a unitization clause. The remaining leases are from the owners of the other undivided ½ mineral interest of the NW/4 of Sec. 17 and these leases contain unitization clauses similar to the clauses in Plaintiff's lease.

Defendant and Sparlin moved in equipment and began preparing a location for the drilling of a gas well near the common boundary of the NW/4 and SW/4 of Sec. 17 on January 18, 1977.[2] The Defendant and the other leaseholders on the W/2 of Sec. 17 further joined together for these operations by filing a declaration of unitization on January 18, 1977. At the time the gas well was drilled on the NW/4 of Sec. 17, 120 acres of the NW/4 had been combined by unitization with 40 acres from the SW/4 of Sec. 17. Said unitization agreement was joined by the owners of 100% of the working interest and the owners of 75% of the royalty interest pursuant to the unitization clauses in their leases. Drilling operations were commenced on the unitized tract on or before January 18, 1977, which is sufficient

to hold the lease in question beyond the primary term if the unitization agreement is valid.

On December 2, 1976, Plaintiff Billy Heath notified the Defendant's predecessor in title that he hoped the operator would drill before January 18, 1977, but if the operator was not going to drill then Plaintiff requested a release of the lease. On January 19, 1977, Plaintiff Billy Heath notified Defendant's assignor that the oil and gas lease in question had expired and demanded a release to that effect. On March 16, 1977, the attorney for the Plaintiffs' notified Defendant's assignor that it was Plaintiffs' position that the lease had expired. On July 19, 1977, the attorney for the Plaintiffs notified Defendant's assignor that the lease in question had expired and they would be willing to enter into a new lease for a $1,600.00 bonus. On February 10, 1978, Sparlin conveyed to Defendant his interest in Plaintiffs' property. On February 20, 1978, Plaintiffs' attorney made a demand for release of the lease in question.

On November 28, 1978, Plaintiffs returned Defendant's deposit of shut-in gas royalty payment.

Plaintiffs contend that the declaration of unitization covering 160 acres of the W/2 of Sec. 17 was invalid when filed and therefore it did not operate to extend the primary term of the lease in question. Plaintiffs assert that as half of the leases of the NW/4 of Sec. 17 did not have unitization clauses the declaration of unitization filed by the leaseholders was invalid. It is Plaintiffs' position that in order to have a voluntary unitization 100% of the persons having an interest in the property must agree to said unitization. Plaintiffs further contend that the unitization of the land in

---

unitized only with interests whose lease agreement also contains a unitization clause. The lease in question permits unitization of the "leased premises or any portion or portions thereof ... with any other lands ...."

2. January 18, 1977, is within the three-year lease term as the general rule in determining duration of a leased interest is that the day of the grant is excluded and the last day is included in the primary term of a lease. See Kuntz, *The Law of Oil and Gas*, Vol. 2 § 21.5 (1972).

question was not made in good faith and is therefore invalid.[3]

Defendant contends that the declaration of unitization fulfilled the requirements of the unitization mandate in the lease in question and was therefore effective to extend the primary term of said lease. Defendant further takes the position that the declaration of unitization was effective to combine the leasehold interest and royalty interest of the SW/4 of Sec. 17 with the leasehold interest and an undivided ½ of the royalty interest of the NW/4 of Sec. 17 as all of these parties agreed to unitization either by execution of the declaration of unitization or through clauses in their leases. The owners of the other undivided ½ royalty interest in the NW/4 of Sec. 17 whose leases did not contain a unitization clause would simply not be bound by the agreement and would be paid royalties by the operator in accordance with their leases.

An examination of the Stipulation of Facts and Briefs of the parties and the statements made by counsel at oral arguments in this case reveals that there is essentially only one issue involved in this case, that being: Is a voluntary unitization agreement effective to extend the primary term of a lease which contains a unitization clause if there are non-consenting royalty interest owners, in the unit, owning undivided interests in a tract within the unit?

The parties in the instant case are relying on case law from jurisdictions other than Oklahoma as authority for their respective positions as there does not appear to be any controlling case law from Oklahoma on the issue presented by this case. In fact, case law in general on the issue raised herein is sparse.

Plaintiffs are relying primarily on *Guaranty National Bank and Trust of Corpus Christi v. May*, 395 S.W.2d 80 (Tex.Civ.App. 1965), *writ of error refused, n. r. e.*; and *Union Oil Company of California v. Touchet*, 229 La. 316, 86 So.2d 50 (1956), to support their proposition that a voluntary unitization agreement is invalid absent the consent of all royalty owners within the unitized tract.

Defendant is relying primarily on *Bruce v. Ohio Oil Co.*, 169 F.2d 709 (Tenth Cir. 1948), *cert. denied*, 336 U.S. 913, 69 S.Ct. 604, 93 L.Ed. 1077 (1948) (construing Oklahoma law); *Whelan v. Placid Oil Co.*, 274 S.W.2d 125 (Tex.Civ.App.1954), *writ of error refused, n. r. e.*; and 5 Summers *Oil and Gas*, § 967, at 104–106 (1966); to support her proposition that the voluntary unitization agreement is valid and a non-consenting royalty owner is merely dealt with pursuant to his lease and excluded from the unit.

The Court believes that the law of Oklahoma is as expressed in 5 Summers, *Oil and Gas, supra* at 104–105:

The typical lease containing a pooling clause will cover the leased lands to all depths, but there exists the possibility of its exercise for only a part of the lands by horizontal segregation as well as vertical segregation. Additionally, pooling can be limited to oil but not gas, and vice versa. Then, there is the problem of the lands with which the lease lands are pooled. *Is pooling permitted when the pooling parties control less than the total interest in the pooled unit involved and, therefore, cannot create a unit in which all interests are pooled?*

Insofar as these problems are specifically covered by the pooling clause itself, the agreement controls. However, so infinite are the potential combinations arising from the three dimensional aspect of oil and gas leases, further complicated by potential division by substances, even the best drafted clauses inevitably will overlook some possibilities.

---

Plaintiffs do not contend herein that the well was not commenced in term.

**3.** As to Plaintiffs' contention that the declaration of unitization was entered into not in good faith on the part of the leaseholders, Plaintiffs have wholly failed to present any evidence of bad faith. The law presumes that men will act in good faith and bad faith must be established affirmatively. *Boone v. Kerr-McGee Oil Industries*, 217 F.2d 63 (Tenth Cir. 1954). Therefore, this contention is clearly without merit on the basis of the record before the Court at this time.

Cases dealing within this problem are few. *The better view would seem to be that, absent negative language in the clause, any pooling combination is permissible, subject only to the test of good faith.*

Insofar as can be discerned, this appears to be the developing trend of the law. *It has been held that undivided fractional interests can be pooled without pooling all ownership interests in a tract.* Working interests can pool without the corresponding royalty interests being pooled. Pooling of less than all the lease acreage by vertical segregation has been upheld. On the other hand, and somewhat contrary in result, is a case where a pooling to lands, among which were lands containing a non-consenting ownership, was invalid. *There may be some justification for this holding if it means that the type of pooled unit contemplated by that particular pooling power was thwarted, but the decision is out of the apparent trend, if it means the holder cannot deliberately pool into less than a total mineral ownership where coverage of less than all ownerships in land is not expressly forbidden.* (Emphasis added and footnotes omitted)

The foregoing passage from Summers is specifically discussing the *Touchet* case relied on by the Plaintiffs. The Court agrees with this analysis of the *Touchet* case.

The case of *Whelan v. Placid Oil Co., supra,* is similar to the instant case in that it dealt specifically with the validity of a unitization agreement which included a tract of land in which the undivided ownership was split between royalty owners who had executed leases granting the lessor the right to pool and royalty owners who had executed leases which did not contain such powers granted to the lessor. The Court in *Whelan* held at 274 S.W.2d 128 that a co-tenant has:

> "[T]he legal right to incorporate a pooling agreement into an initial or original oil and gas lease without the consent or joinder of the other co-tenant or co-tenants, so as to create a valid contract binding the undivided interest of such acting co-tenant."

For the Court to hold otherwise would in effect invalidate the pooling clause of a co-tenant which was specifically bargained for in a lease unless the other co-tenants consented to such a clause. If there is a non-consenting co-tenant royalty owner within an otherwise valid unit, said royalty owner would be paid royalties pursuant to his lease agreement and not under the unitization agreement. *See Whelan v. Placid Oil Co., supra; see also Bruce v. Ohio Oil Co., supra.*

■ In the instant case Plaintiffs' lease contains a unitization clause and Defendant has unitized 40 acres of Plaintiffs' tract with 120 acres of an adjoining tract. The owners of an undivided one-half of said adjoining tract have leases with unitization clauses similar to Plaintiffs'. The unitization is valid on its face and is therefore effective to unitize the tracts in question. The remaining owners of the undivided one-half royalty interest in said adjoining tract which do not have unitization clauses in their leases are simply not bound by the unitization agreement herein and they will be paid royalties under their lease agreement and not under said unitization agreement. This means that the Defendant will be paying them 14.0625% [4] of the total runs as royalty instead of 12.5%. The Defendant has agreed to this, but it does not invalidate the unitization agreement.

4. The royalty owners will receive royalties as follows:

| Owner | Percent of Total Runs |
|---|---|
| 1. Heath (Plaintiffs) | 2.34375% |
| 2. Brack Heirs: Owners of remaining undivided ¼ of SW/4 of Sec. 17 | .78125% |
| 3. Owners of undivided ½ of NW/4 of Sec. 17 with unitization clauses in their leases. | 4.68750% |
| 4. Law Heirs: Owners of remaining undivided ½ of NW/4 of Sec. 17 without unitization clauses in their leases. | 6.25000% * |

\* Percentage is based on their lease and not on the unitization agreement as with the other royalty owners. This represents ½ of ⅛ of the total runs.

In view of the foregoing, the Court finds and concludes that Plaintiffs are not entitled to the relief they seek herein and therefore the Court determines that the unitization agreement filed on January 18, 1977, is valid and effective to hold Plaintiffs' lease beyond the primary term under Plaintiff's lease. Accordingly, an appropriate Judgment consistent with the foregoing will be entered by the Court in favor of the Defendant and against the Plaintiffs.

Philemon Ray CRIDER, Petitioner,

v.

T. M. KEOHANE, Warden, Respondent.

No. CIV–78–0123–D.

United States District Court,
W. D. Oklahoma.

May 27, 1981.

Philemon Ray Crider, pro se.

Larry D. Patton, U. S. Atty. by David A. Poarch and Paul Richards, Asst. U. S. Attys., Oklahoma City, Okl., for respondent.

ORDER

DAUGHERTY, Chief Judge.

On October 15, 1980 the mandate of the Court of Appeals was filed herein reversing and remanding this case for proceedings consistent with the per curiam opinion of the Court of Appeals. Said Opinion expressed no opinion on the merits of the Petitioner's claims, and invited further proceedings by way of pretrial discovery or a proper expansion of the record. (Court of Appeals No. 79–1590.) On October 16, 1980, the Respondent filed a Motion to Dismiss with a supporting Brief and evidentiary materials wherein the issue of mootness was raised by reason of the fact that the Petitioner only complains herein of prison

conditions at the Federal Correctional Institution, El Reno, Oklahoma and he is no longer incarcerated therein. The Petitioner filed a Response which denied the Respondent's claim of mootness and further alleged that dismissal is precluded by the decision of the Court of Appeals herein. The Petitioner has also filed a Motion to Amend Complaint as well as a Motion to Expand Record. The latter Motion includes attached exhibits consisting of "Affidavits" of some 18 inmates of said Federal Correctional Institution at El Reno, Oklahoma which can be generally categorized as condition of confinement complaints including, inter alia, inadequate food, living space, mail service, clothing and medication. Upon review of this proceeding the Court finds and concludes as follows:

■ 1. The threshold question is the effect to be given the Order entered by the Court of Appeals on September 30, 1980 regarding Appellee's (Respondent herein) petition for rehearing in that court wherein the Court stated:

"[u]pon consideration of the arguments of appellee, the petition for rehearing and the motion to supplement the record are hereby denied."

Said Order was entered following the Respondent's pleadings filed in the Court of Appeals raising the issue of mootness which is also the basis for the instant Motion to Dismiss. These circumstances lead this Court to the conclusion that the Court of Appeals has not adjudicated the merits of the mootness issue and the failure of the Petition for Rehearing does not imply any

judgment on the merits of this issue. *In re Grand Jury Investigation*, 542 F.2d 166, 173–174 (3 Cir. 1976), *cert. denied*, 429 U.S. 1047, 97 S.Ct. 755, 50 L.Ed.2d 762 (1977).

2. The Petitioner filed this habeas corpus action on February 15, 1978 while he was incarcerated at the Federal Correctional Institution, El Reno, Oklahoma. His complaint raised only conditions of confinement issues.[1] Said habeas corpus complaint under 28 U.S.C. § 2241 sought no relief other than release from said institution. There were no averments that the Petitioner represented a class of federal prisoners having similar condition of confinement claims. Petitioner did not seek to proceed as a class action. The first suggestion of a class action under Rule 23, Federal Rules of Civil Procedure, 28 U.S.C.A., was subsequent to the denial of the petition of rehearing by the Court of Appeals and following the Respondent's motion to dismiss now under consideration. This suggestion which did not request class action determination under Rule 23, *supra*, was contained in Petitioner's Motion to expand the record to allege continuing constitutional violations at the Federal Correctional Institution, El Reno, Oklahoma, supported by said "affidavits". Hence, Petitioner did not bring his action as a class action, a class action has not been determined or certified herein by the Court and it is questionable if Petitioner now desires to so proceed as he has not pled the prerequisites of a Rule 23 class action or noticed a class action certification request in accordance with Local Rule 17(d).[2]

---

1. The United States Supreme Court has not decided the propriety of the use of a writ of habeas corpus to challenge the conditions of confinement. In *Bell v. Wolfish*, 441 U.S. 520, note 6 at page 526, 99 S.Ct. 1861, note 6 at page 1867, 60 L.Ed.2d 447 (1979), the United States Supreme Court said:

Thus, we leave to another day the question of the propriety of using a writ of habeas corpus to obtain review of the conditions of confinement, as distinct from the fact or length of the confinement itself.

But as the Court of Appeals did not take note of this questionable procedure, we will not and only mention it as it may bear on the propriety of a class action in a habeas corpus case.

2. This Rule provides:

(d) *Notice of Request for Class Action Determination.* Whenever any action or proceeding is commenced which includes a request that the Court certify the case or proceeding as a class action, the plaintiff shall immediately notify the judge to whom said action is assigned of the request for class action determination. If the plaintiff fails to do so, every other party receiving notice of such suit shall so notify the judge to whom the case is assigned, provided, however, that as soon as a notice is given by any party the other parties are relieved of this

obligation. The notice herein required shall be in writing and the Clerk shall promptly notify

the judge to whom the case is assigned of such notice.