JONES, Justice.
This is an oil and gas case. The Defendants appeal following an adverse ruling in a declaratory judgment action declaring that leases on two tracts of land had expired at the end of the primary term. We affirm.
FACTS
The west half of Section 33, Township 13 South, Range 14 West, in Lamar County, Alabama, is owned as follows: The Blacks own the west half of the southwest quarter of the section; the Bomans own the west half of the northwest quarter of the section, less 9 acres; the Sorrells own the remaining 9 acres; I.V. Smith owns the east half of the northwest quarter of the section; and Perkins owns the east half of the southwest quarter of the section.
On July 25, 1979, Cherry and Associates, Inc., obtained oil, gas, and mineral leases covering the Black and Boman property. Each lease had a primary term of three years. Subsequently, Cherry assigned 85% of its rights under the leases to Michigan. In addition to the rights held by Cherry and Michigan on the Black and Boman property, they own oil, gas, and mineral rights to the Perkins property. The oil, gas, and mineral rights to the Smith property are held by W.E. Sistrunk and Phillips Petroleum Company. The oil, gas, and mineral rights to the Sorrells’ property are held by Pruit Production Company.
By the terms of the leases held by Cherry and Michigan, expiration would occur on July 25, 1982, at midnight, unless validly extended by the lessees. Extension could be accomplished in one of two ways: either the lessees could conduct operations on either the Black or Boman property before expiration of the lease; or the lessees could conduct operations on property which had been joined or “pooled” with the Black or Boman property in a valid unit. In order to “pool” or “unitize” leases, the lessee must obtain a force-pooling order from the Oil and Gas Board or the owners of the other leases must agree to pool. Code 1975, § 9-17-13. The parties agreed that operations had not been conducted on the Black or Boman property prior to the expiration of the lease. The parties also agreed that the lessees did not attempt to obtain a force-pooling order from the State Oil and Gas Board. Rather, Michigan and Cherry maintain that they conducted operations on property (namely, the Perkins property) that had been voluntarily joined with the Black and Boman property in a unit. Michigan “believed” that it had obtained permission from Sistrunk and Phillips to unitize the entire west half of Section 33. Alternatively, Appellants contend that agreement as to the 320 acres was not necessary, but that the unit formed consisted of lands (of less acreage) whose owners had agreed to unitize. Appellees, of course, disputed *826 this; and Michigan’s factual contentions on this point were rejected by the trial court.
In keeping with its contention that a voluntary unit was formed, Michigan filed, on July 20, 1981, a “Declaration of Unit” with the Probate Office of Lamar County. The Declaration purported to “pool” or “unitize” all of the leases existing on property in the west half of Section 33.
On June 15, 1982, Michigan wrote Sis-trunk a letter by which Michigan proposed to form voluntarily a unit consisting of the 320 acres in the W 1/2 of Section 33 for the purpose of drilling a gas well at a location on the Perkins property. Michigan requested that Sistrunk voluntarily pool the Smith property with the unit. The letter included an “Authorization for Expenditure” requiring Sistrunk’s signature if Sis-trunk agreed. Michigan sent the same documents to Phillips Petroleum Company on the same day. Neither Sistrunk nor Phillips ever signed and returned the “Authorization for Expenditure.”
After drilling was commenced on the Perkins property, Sistrunk wrote Michigan a letter by which he specifically declined to participate in the formation of the proposed unit. He also wrote a letter to the Oil and Gas Board setting out his objections to the formation of the unit. On August 3, 1982, Sistrunk filed an emergency petition with the board seeking to reform the unit for the Perkins drilling to forty acres instead of the original 320 acres. The petition alleged that Michigan did not have control of the full 320 acres in that it did not have Sistrunk’s permission, and, therefore, asked the board to reform the unit. The petition was initially denied without a hearing and was appealed to the trial court. The court ordered the board to have a hearing on the petition, which was held on September 17, 1982. At the conclusion of the hearing, because the issue then before the board had been rendered moot,, Sis-trunk withdrew his petition.
At trial of these actions, the court found Michigan did not have authority to include the Smith property in the “Declaration of Unit” filed on July 20, 1982, and that the declaration therefore was ineffective to create a valid unit. Because the unit was not voluntarily formed, and neither Michigan nor Cherry received a force-pooling order from the board, the trial court held that the Black and Boman leases had expired at the end of their primary term. Therefore, the Plaintiffs/Appellees were entitled to the cancellation of their leases. From this order, Defendants appeal.
ISSUES
The primary issue presented is whether the “Declaration of Unit” filed by Michigan on June 20, 1982, served to pool the unit so that the leases held by Michigan and Cherry on the Black and Boman properties were extended past their primary term of three years.
Michigan and Cherry also contend that the trial court was without jurisdiction to hear this case because the Plaintiffs did not exhaust their administrative remedies before the Oil and Gas Board before coming before the trial court.
DECISION
Code 1975, § 9-17-13(a), establishes the procedures by which a unit may be formed. That section provides:
“(a) When any mineral or other related interests deriving from two or more separately owned tracts of land are embraced within an established or a proposed drilling or production unit, or when there are separately owned interests in all or a part of an established or proposed drilling or production unit, or any combination of such, the persons owning such interests therein may validly agree to integrate or pool such interests and to develop such interests and associated lands as a drilling or production unit. Where, however, such owners have not agreed to so integrate or pool such interests, the board shall, for the prevention of waste or to avoid the drilling of unnecessary wells, require such persons owning such interests to do so and to develop *827 their interests and the associated lands as a drilling or production unit.”
Appellees contend, and the trial court agreed, that the “proposed drilling or production unit” in the present case is the 320-acre west half of Section 33 described in Michigan’s “Declaration of Unit” filed on July 20, 1982. No other unit was “proposed” by declaration or otherwise prior to July 26, 1982. Because all the parties did not agree to form the unit, Michigan and Cherry had but one alternative by which to form a valid unit, i.e., obtain a force-pooling order from the Oil and Gas Board. The parties agree that neither Michigan nor Cherry did this.
The trial court found that Michigan and Cherry’s attempt to validate the leases after the expiration date by filing an Amended “Declaration of Unit” is without force or effect. In other words, Michigan and Cherry never attempted to pool the Boman, Black, and Perkins leases into a 240-acre unit before the expiration of the lease term; rather, they attempted to pool the Boman, Black, Perkins, Smith and Sorrells leases into a 320-acre unit. Their Amended “Declaration of Unit” filed after the expiration of the lease term cannot be held to relate back to a time prior to the expiration of the lease term.
Appellants, however, maintain that because they filed a “Declaration of Unit” (including all the property located in the west 1/2 of Section 33) and began “operations” (within the meaning of the leases) on that unit before the expiration of the primary term, they validly formed a unit which would extend the expiration time of the leases past the primary term. At trial, witnesses for Michigan and Cherry testified that they had communicated with Sis-trunk and that he had given his permission for the unitization. On cross-examination, however, Mr. Gibson, Michigan’s representative, stated that he never received permission from Sistrunk “personally.” The trial court found that neither Sistrunk nor Phillips had given permission for the unitization. The question remains whether that permission was necessary to form a valid unit.
Alternatively, Michigan and Cherry argue that, even if Sistrunk and Phillips withheld permission to pool their interests in the unit, the pooling is effective with respect to the remaining leases, and those leases were extended by the operations on the Perkins well. Appellants rely on Paragraph 4 of the pertinent leases to support their position:
“Lessee is hereby granted the right, at its option, to pool or unitize all or any part of said land and of this lease as to any or all minerals or horizons thereunder, with other lands, lease or leases, or portion or portions thereof, or mineral or horizon thereunder, as to establish units containing not more than 80 acres plus 10% acreage tolerance; provided, however, a unit may be established or an existing unit may be enlarged to contain not more than 640 acres plus 10% tolerance, if unitized only as to gas or only as to gas and liquid hydrocarbons (condensate) which are not a liquid in the subsurface reservoir. If larger units are required, under any governmental rule or order, for the drilling or operation of a well at a regular location, or for obtaining maximum allowable, from any well to be drilled, drilling, or already drilled, any such unit may be established or enlarged, to conform to the size required by such governmental order or rule. Lessee shall exercise said option as to each desired unit by executing an instrument identifying such unit and filing it for record in the public office in which this lease is recorded. Each of said options may be exercised by lessee from time to time, and whether before or after production has been established either on said land or on the portion of said land included in. the unit or on other land unitized therewith and any such unit may include any well to be drilled, being drilled or already completed. A unit established hereunder shall be valid and effective for all purposes of this lease even though there may be land or mineral, royalty or leasehold interests in *828 land, within the unit which are not pooled or unitized. Any operations conducted on any part of such unitized land shall be considered, for all purposes, except the payment of royalty, operations conducted under this lease. There shall be allocated in the land covered by this lease included in any such unit that proportion of the total production of unitized minerals from wells in the unit, after deducting any used in lease or unit operations, which the number of surface acres in the land covered by this lease included in the unit bears to the total number of surface acres in the unit. The production so allocated shall be considered for all purposes, including the payment of delivery of royalty, overriding royalty, and any other payments out of production, to be the entire production of unitized minerals from the portion of said land covered hereby and included in such unit in the same manner as though produced from said land under the terms of this lease.” (Emphasis supplied.)
In further support of their contention, Appellants urge us to adopt the reasoning of the Oklahoma federal district court in Heath v. Fellows, 526 F.Supp. 723 (W.D.Okla.1981), as there does not appear to be any controlling case law from Alabama on the issue presented. Indeed, cases dealing with this issue are few. But the Heath Court, relying heavily on 5 Summers, Oil and Gas, § 967, at 104-106 (1966), was interpreting common law with respect to the pooling provisions of the lease there in question.
Alabama law, however, is controlled by a statute — Code 1975, § 9-17-13. It is this statute upon which the trial court based its final judgment. Although the leases in question may be read to allow a pooling with less than unanimous agreement, we cannot so read Code 1975, § 9-17-13.
That section plainly allows pooling of leases in one of two ways: 1) by agreement of the parties; or 2) by obtaining a force-pooling order from the Oil and Gas Board. It is not disputed that Appellants never did the latter; the evidence shows they never did the former. Therefore, no unit was formed.
Michigan and Cherry also argue that the Oil and Gas Board is vested with the authority to hear disputes of the kind and type with which we are concerned in the present case. Because Appellees did not challenge the validity of the drilling permit before the board, Appellants assert that the trial court lacked jurisdiction to hear the evidence and determine the matter.
Additionally, Appellants contend that because Sistrunk withdrew his petition before the board had an opportunity to rule on it, the Appellees lacked standing to challenge the validity of the unit.
Appellees, however, refute these arguments by explaining that Sistrunk withdrew his challenge before the Oil and Gas Board only after the board declared that the permit applied only to 40 acres on the Perkins property and that it considered the permit issue moot. The Bomans and Blacks were not parties to the board meeting. Furthermore, the issue before the trial court and this Court is not whether the permit was valid, but whether the formation of the unit was valid, an issue that was never before the board. Michigan’s and Cherry’s contention with respect to the jurisdictional issue is without merit.
Therefore, because we find no error in the trial court’s ruling, and agree that the leases expired at the end of their primary term, the judgment of the trial court is due to be, and it hereby is, affirmed.
AFFIRMED.
MADDOX, FAULKNER, ALMON and EMBRY, JJ., concur.
BEATTY and ADAMS, JJ., dissent.
TORBERT, C.J., and SHORES, J., not sitting.